**RESOLUTION TRUST CORPORATION**
as Receiver for San Jacinto Savings
Association, F.A., Plaintiff,

v.

**1601 PARTNERS, LTD.**, Southmark Investment Group, Inc., SHL General Partner XIII, Ltd., SHL Properties Acquisition Corp. II., Gene E. Phillips and William S. Friedman, Defendants.

Civ. A. No. 3–91–2095–H.

United States District Court,
N.D. Texas,
Dallas Division.

June 23, 1992.

---

R. Whitney Meyers, Jr., Patricia M. Reed, David M. Gottfried and David I. Hammond, Leonard Marsh Hurt Terry & Blinn, Dallas, for plaintiff.

Charles W. Cunningham, McKool Smith, Dallas, for defendants Phillips and Friedman.

Michael A. Barragan, Gardere & Wynne, Dallas, for defendant 1601 Partners, Ltd.

## MEMORANDUM OPINION
## AND ORDER

SANDERS, Chief Judge.

Before the Court are: Plaintiff's Motion for Summary Judgment, filed May 1, 1992; Response by Defendants Phillips and Friedman, filed May 15, 1992; Plaintiff's Reply, filed June 1, 1992; and Sur–Reply of Phillips and Friedman, filed June 8, 1992.

## BACKGROUND

This suit arises from the default by Defendant 1601 Partners, Ltd. on certain payments due on a promissory note. Plaintiff Resolution Trust Corporation as Receiver for San Jacinto Savings Association, F.A. ("RTC") seeks summary judgment against two of the general partners of 1601 Partners, Defendants Gene E. Phillips and William S. Friedman.

Defendant 1601 Partners executed the note, along with an accompanying Deed of Trust as security, on October 2, 1984 in the amount of $1,650,000 and delivered it to Southmark Corporation ("Southmark"). Southmark subsequently assigned the note to its wholly-owned subsidiary, San Jacinto Savings Association ("SJSA"). Before making that assignment, however, Southmark executed two separate agreements in which Southmark agreed to indemnify Phillips and Friedman and hold them harmless from any liability on the note in question. When 1601 Partners failed to make certain payments due under the note, SJSA foreclosed on the property securing the note, receiving a bid price of $1,050,000. The RTC, as Receiver for SJSA, seeks to recover the deficiency amount, which with interest totals approximately $1.9 million.

## SUMMARY JUDGMENT

■ Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment or partial judgment as a matter of law. *See* Fed.R.Civ.P. 56. As the Fifth Circuit stated in *Christophersen v. Allied–Signal Corp.*, 902 F.2d 362, 364 (5th Cir.1990), "[b]efore a court may grant summary judgment, the moving party must demonstrate that it is entitled to judgment as a matter of law because there is no actual dispute as to an essential element of the plaintiff's case." A movant for summary judgment need not support the motion with evidence negating the opponent's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). On the other hand, the party opposing the motion prevails if it presents any evidence tending to support the claim and all evidence must be viewed in the light most favorable to the motion's opponent. *See Gremillion v. Gulf Coast Catering Co.*, 904 F.2d 290, 292 (5th Cir. 1990). Summary judgment may be entered against a party if after adequate time for discovery the party fails to establish the existence of an element essential to his or her case and as to which he or she will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 324–26, 106 S.Ct. at 2553–54.

## DISCUSSION

Plaintiff RTC moves for summary judgment on the ground that Defendants Phillips and Friedman were at all relevant times general partners of 1601 Partners and, therefore, they are jointly and severally liable for the debts of 1601 Partners owed to the RTC.

■ Defendants Phillips and Friedman respond that Southmark released them from any liability to Southmark on the note in question. That defense, they contend, is effective against Southmark's transferees—SJSA and Plaintiff RTC—because those entities are not holders in due course of the note. Phillips and Friedman cite to Section 3.302 of the Texas Business & Commerce Code ("UCC"), which provides that, if a note is not a "negotiable instrument," its holder cannot qualify as a holder in due course which takes free of personal defenses. Tex.Bus. & Com.Code Ann. § 3.302 (West 1968). Phillips and Friedman insist that the note is not a negotiable instrument under UCC 3.104 because it does not contain an unconditional promise. *Id.* § 3.104(a)(2).

Section 3.105(b) of the UCC provides that a promise is not unconditional if the instrument "states that it is subject to or governed by any other agreement." Here, the note states that "the terms, agreements and conditions of [the Deed of Trust] are by reference made a part of this instrument." Courts hold that when an instrument incorporates by reference the terms of another document the instrument becomes "subject to or governed by" another agreement for purposes of Section 3.105(b), and the promise contained within the instrument, therefore, is rendered conditional. *See Holly Hills Acres, Ltd. v. Charter Bank of Gainesville*, 314 So.2d 209, 210–11 (Fla.Dist.Ct.App.1975) ("The note, incorporating by reference the terms of the mortgage, did not contain the unconditional promise to pay required by [UCC 3–104(a)(2) ]."); *Booker v. Everhart*, 294 N.C. 146, 240 S.E.2d 360, 363–64 (N.C.1978) ("Because separate documents have been made a part of the note by its express terms, the promise contained therein is conditional, and the note nonnegotiable.").

■ Mere reference to a note being secured by a mortgage, of course, is common commercial practice and does not affect the negotiability of the note. *See* Tex.Bus. & Com.Code Ann. § 3.105(a)(5) (West 1968). The language within the note executed by 1601 Partners, however, exceeds the outer bounds of "mere reference," as it explicitly purports to incorporate the terms of the Deed of Trust. Accordingly, the note is not a negotiable instrument under Texas law.

■ Plaintiff RTC, apparently, does not contest the non-negotiability of the note under Texas law. Instead, it seeks refuge in familiar territory—that of the *D'Oench, Duhme* and federal holder in due course doctrines. Plaintiff RTC argues that, because the agreements constituting the release were not formally approved by the Board of Directors of SJSA and were not found in SJSA's minutes or loan files when the receivership was created, any defense based on those agreements is barred by the doctrine enunciated in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) and codified in 12 U.S.C. § 1823(e).

While it is true, as noted by the RTC, that *D'Oench, Duhme* has been held to bar virtually every imaginable defense raised by an individual or corporation against the FDIC or RTC that depends on an agreement not found in the failed bank's records, in this case the doctrine comes up short. The RTC would have the Court believe that *D'Oench* applies to agreements entered into between private, non-financial institution parties simply because the payee assigns the note to a financial institution that subsequently fails. The release agreements at issue were entered into between Phillips and Friedman, on the one hand, and Southmark, on the other hand. Neither SJSA nor any other financial institution was a party to the agreements. No evidence has been presented that Phillips or Friedman anticipated that the note would end up in the hands of a regulated financial institution. Consequently, the releases were not, in any sense, the product of a "scheme or arrangement" likely to mislead bank examiners. *D'Oench, Duhme*, 315 U.S. at 460, 62 S.Ct. at 681; *Beighley v. FDIC*, 868 F.2d 776, 784 (5th Cir.1989).

The expansion of the *D'Oench* doctrine requested by the RTC would permit payees to abrogate defenses to notes by assigning them to failing financial institutions. Under the RTC's theory, *D'Oench* and its statutory counterpart would bar the defenses since the documents establishing them would not become part of the records of the institution which were approved by the bank's board of directors or its loan committee. As argued by Defendants, Southmark could, for example, effectively wipe out all of its debtors' valid defenses by assigning its notes to its wholly-owned financial subsidiary on the eve of regulatory takeover, thus creating value in notes when there was none before.

■ The RTC's reliance on the federal holder in due course doctrine is similarly misplaced. The RTC contends that, because it took the note in good faith and for value, the RTC is entitled to protection as a

holder in due course, even though the note is non-negotiable. In *Campbell Leasing, Inc. v. FDIC*, 901 F.2d 1244 (5th Cir.1990), the Fifth Circuit held that the FDIC may be a federal holder in due course without meeting the technical state law requirements for holder in due course status. Negotiability, however, is not a requirement the Fifth Circuit has been willing to relax. In *Sunbelt Sav., FSB v. Montross*, 923 F.2d 353, 356 (5th Cir.), *reh'g granted*, 932 F.2d 363 (5th Cir.), *opinion reinstated in part*, 944 F.2d 227 (5th Cir.1991) (en banc), the court expressly refused to "extend federal holder in due course status to the FDIC or its successor in cases in which it acquires non-negotiable instruments through purchase and assumption transactions." Accordingly, the non-negotiability of the note in this case prevents the RTC from qualifying as a holder in due course. Defendants' release defense is effective against the RTC.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED.

SO ORDERED.