Diversified Financial Systems, Inc. et al. v. Hill, Heard, O'Neal, Gilstrap & Goetz, P.C., et al.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-98-276-CV

DIVERSIFIED FINANCIAL SYSTEMS,      APPELLANTS

INC. AND DIVERSIFIED FINANCIAL 

SOUTHEAST, INC. 

V.

HILL, HEARD, O’NEAL, GILSTRAP & APPELLEES 

GOETZ, P.C. A/K/A HILL, GILSTRAP, 

MOORHEAD, WHITE, BODOIN & 

WEBSTER, A PROFESSIONAL

CORPORATION, DWIGHT A. HEARD, 

FRANK HILL, JOINTLY AND SEVERALLY

       

------------

FROM THE 96
th
 DISTRICT COURT OF TARRANT COUNTY

------------

OPINION
 
ON REMAND

------------

I.  Introduction

Appellants Diversified Financial Systems, Inc. (“Systems”) and Diversified Financial Southeast, Inc. (“Southeast”) (collectively “Diversified”) appeal from the trial court’s summary judgment in favor of Appellees Hill, Heard, O’Neal, Gilstrap & Goetz, P.C. a/k/a Hill, Gilstrap, Moorhead, White, Bodoin & Webster, a Professional Corporation (“Hill Gilstrap”), Dwight A. Heard (“Heard”), and Frank Hill (“Hill”) (collectively “the Firm”).  In five issues, Diversified complains that the trial court erred in granting the Firm’s no-evidence motion for summary judgment because:  (1) the affidavit attached to Diversified’s response to the motion establishes that the affidavit was based upon the personal knowledge of the affiant; (2) Diversified’s summary judgment evidence raised a genuine issue of material fact whether Southeast was the owner and holder of the note and guaranties; (3) Diversified’s summary judgment evidence raised a genuine issue of material fact regarding the Federal Deposit Insurance Corporation’s (“FDIC”) receivership of Commonwealth Bank (“Commonwealth”); (4) Diversified’s summary judgment evidence raised a genuine issue of material fact regarding the amount due and owing by the Firm under the note and guaranties; and (5) the Firm did not present any evidence in support of its statute of limitations affirmative defense.  We reverse the trial court’s judgment and remand this case for trial on the merits. 

II.  Factual Summary

This case involves a dispute over a promissory note.  Commonwealth allegedly loaned $50,000 to the Firm.  Heard and Mazel Merrill signed the promissory note on behalf of the Firm, and Heard and Hill each signed a guaranty.  Systems purchased the note and guaranties from the FDIC.  Systems filed suit against the Firm because of the Firm’s failure to make payments on the loan and against Heard and Hill for their failure to perform as guarantors.  Systems assigned the note and guaranties to Southeast, and Southeast intervened in the suit. 

The Firm moved for summary judgment arguing that there was no evidence to support Diversified’s claims against the Firm.  Diversified filed a response, attaching the affidavit of Southeast employee Charles Olson (“Olson” or “the Olson Affidavit”) as summary judgment proof.  The Firm objected to the affidavit on the ground that some of Olson’s statements were not within his personal knowledge, were legal conclusions or constituted speculation or hearsay and on the ground that the documents attached to the affidavit were hearsay.  The trial court sustained some but not all of the Firm’s objections and struck several portions of the affidavit, including several exhibits.  On January 6, 1998, the trial court granted the Firm’s motion for summary judgment, ordered that Diversified take 
nothing on its claims against Hill Gilstrap, and assessed costs against Diversified.  Diversified now brings this appeal. 

III.  Legal Analysis

A.  Diversified’s Claim on the Note and Guaranties

Diversified contends in its first, second, and fourth issues that Diversified’s summary judgment evidence raised a material fact issue as to Diversified’s ownership of the note and guaranties and to the amount of money the Firm owed on the note.  We sustain Diversified’s first, second, and fourth issues.

1.  Standard of Review

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense.
(footnote: 1)  The motion must specifically state the elements for which there is no evidence.
(footnote: 2)  The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.
(footnote: 3) 

A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict.
(footnote: 4)  
We review the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences.
(footnote: 5)  
If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.
(footnote: 6) 

2.  The Note

To collect on the promissory note Diversified must establish that:  (a) a note exists; (b) Diversified is the legal owner and holder of the note; (c) Hill Gilstrap is the maker of the note; and (d) a certain balance remains due and owing on the note.
(footnote: 7)  The Firm argued in its motion for summary judgment that Diversified had no evidence of the amount due and owing on the note and no evidence that Diversified was the owner and holder of the note.

To defeat the Firm’s no-evidence motion, Diversified responded with the Olson Affidavit.  The affidavit included a sworn copy of the note upon which Diversified is suing the Firm, and the note shows on its face:  (1) that Hill Gilstrap is the maker of the note; (2) the amount of the note; and (3) the endorsements of both the FDIC in its corporate capacity (“FDIC-C”) and Systems.  The Olson Affidavit also states in paragraph 4 that “[a] true and correct copy of the original of the Note is attached hereto as Exhibit No. 1A and incorporated herein for all purposes.”  The trial court struck neither this portion of the Olson Affidavit nor the note itself.  Accordingly, the note is considered valid summary judgment evidence for purposes of this appeal.

a.  Amount Due and Owing

According to the note, Hill Gilstrap promised to pay Commonwealth $50,000; however, the note also contemplated that multiple advances were allowed and that $50,000 was the maximum Hill Gilstrap could have borrowed.  The note also stated that the credit arrangement was open-ended, meaning the $50,000 could have been borrowed more than once as long as the balance was paid off each time.  Both parties agreed at the time the note was signed that Commonwealth had advanced $13,000 to Hill Gilstrap and that future advances were contemplated.

The Olson Affidavit also included a statement in paragraph 10 that 

[a]fter all just and lawful offsets, payments and credits, Defendants are indebted to Southeast with regard to the Note, Guaranty 1, and Guaranty 2, in the amount of $114,084.93, which includes principal and accrued interest to August 6, 1997, with prejudgment interest continuing to accrue from August 7, 1997, in the amount of $24.66 per day until date of judgment. 

Olson based his statement on an account statement which broke the figure down into components of principal ($50,000), accrued interest to August 6, 1997 ($64,084.93), and a daily dollar amount of interest ($24.66).  This account statement was attached to the affidavit as an exhibit.  The Firm objected to all of the exhibits attached to the Olson Affidavit arguing that because the documents were not generated by Southeast, Olson could have no personal knowledge about whether the documents were exact duplicates or true and correct copies of the originals.  The Firm further argued that the exhibits cannot constitute business records of Southeast and are hearsay.  We only review the trial court’s decision to strike the account statement.  

On appeal, we review a trial court’s decision to admit or exclude evidence under an abuse of discretion standard of review.
(footnote: 8)  An appellate court must uphold the trial court’s evidentiary ruling if there is any legitimate basis in the record for the ruling.
(footnote: 9)
 To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable.
(footnote: 10)  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.
(footnote: 11)
 An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence.
(footnote: 12)  Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court’s decision.
(footnote: 13)
 The Firm argues in its objection that the account statement was not generated by Southeast.  However, of the two pages that make up the statement of the account, the first page bears the initials “DFSE” in the header of the document along with an address.  The second page includes in its header the name “Chuck Olson.”  In light of the fact that the affiant’s name is Charles Olson and the name of the company for which he works is “Diversified Financial Southeast, Inc.” or “DFSE” for short, there is no evidence to support the trial court’s conclusion that the account statement was generated by a third party.
(footnote: 14)  In fact, such a conclusion would be unreasonable and arbitrary under the circumstances.
(footnote: 15)  We also note that on page 30 of its Appellee’s Brief before this court, the Firm judicially admitted that the account statement was produced by an employee of Southeast and that “the documents themselves confirm this.”
(footnote: 16)  

The Firm also argues that the account statement does not meet the requirements of the business records exception of rule 803(6) of the Texas Rules of Evidence and, therefore, constitutes inadmissible hearsay.  The account statement was obviously offered to prove the truth of the matter asserted that the Firm owes Diversified $114,650.88 and this amount is due and owing.
(footnote: 17)  However, to be admissible,
(footnote: 18) the exhibit must qualify under the business records exception of rule 803(6).
(footnote: 19)  To lay the proper foundation for the exception, Olson must meet four requirements:  (i) the account statement was made and kept in the course of a regularly conducted business activity; (ii) it was the regular practice of the business activity to make the account statement; (iii) the account statement was made at or near the time of the event that it records; and (iv) the account statement was made by a person with knowledge who was acting in the regular course of business.
(footnote: 20)
 To lay the foundation for the business records exception, Olson stated:

The exhibits attached hereto are exact duplicates and are true and correct copies of the original documents which are in the possession of Southeast.  I am familiar with the records of Southeast and these records are kept in the regular course of business of Southeast.  It was the regular course of business for Southeast for an employee or representative of Southeast with knowledge of the act of any condition, opinion or diagnosis recorded to make the record or to transmit information thereof to be included in such record and the record was made at or near the time or reasonably soon thereafter.

Olson’s statement lays the proper foundation for each element of the business records exception,
(footnote: 21) and to strike the account statement was to act without reference to the rules of evidence.
(footnote: 22)  Furthermore, the trial court’s decision to strike this exhibit was harmful because without the details included in the account statement, Diversified would be unable to establish that a material fact exists as to the certain amount due and owing on the note.
(footnote: 23)  We hold that the trial court abused its discretion when it struck this exhibit.

In another objection, the Firm challenges Olson’s statement regarding the amount of the Firm’s indebtedness.  Specifically, the Firm argues that because Olson “sets forth no specific facts in his Affidavit to support such a conclusion,” the statement does not constitute competent summary judgment evidence.  We disagree.

Generally, an affidavit by an employee of the financial institution to whom a note is owed, which states the total amount due on the note, is sufficient to raise a genuine issue of material fact of the amount owed.
(footnote: 24)  Detailed proof of the balance of the note is not required.
(footnote: 25)  

The affidavit states that the Firm is indebted to Southeast in the amount of $114,084.93 and that this figure includes both principal and interest to August 6, 1997.  The affidavit also states that interest accrues at a daily rate of $24.66 per day.  We hold that the statement is not conclusory, and because Diversified would have no evidence of its claim that a certain amount is due and owing without Olson’s statement, we hold that the trial court abused its discretion when it struck the statement.
(footnote: 26)
 Diversified is not required to conclusively establish the amount due and owing on the note in order to defeat the Firm’s no-evidence motion; more than a scintilla of evidence will suffice.
(footnote: 27)  Considering Olson’s statement and the exhibit offered in response to the Firm’s no-evidence motion and reviewing the evidence in the light most favorable to Diversified and disregarding all contrary evidence and inferences, Diversified has established more than a scintilla of probative evidence to raise a genuine issue of material fact as to the amount due and owing on the note.
(footnote: 28)  We sustain Diversified’s first and fourth issues as to Diversified’s claim of a certain amount due and owing.

b.  Ownership of the Note

We next turn to Diversified’s contention that its response to the Firm’s motion for summary judgment raised a fact issue as to the ownership of the note.  As an initial matter we point out that the note sued upon is not a negotiable instrument,
(footnote: 29) and accordingly, the endorsements on the note do not create a presumption of ownership upon transfer.
(footnote: 30)  In order to fall under the Texas Business & Commerce Code (“Commerce Code”), a note must be a written unconditional promise to pay a sum certain in money upon demand or at a definite time and payable to the order of a named person or to bearer.
(footnote: 31)  

The note between Hill Gilstrap and Commonwealth explicitly provides that multiple advances are contemplated by the parties and that Hill Gilstrap will be entitled to additional credit up to the maximum amount of the note once payments have been applied against the outstanding balance of the note.  The note states that Hill Gilstrap promises to pay $50,000 to Commonwealth, but it also states that at the signing of the note the Firm has only received a principal advance of $13,000.  Accordingly, the note is not for a fixed amount of money and is not a negotiable instrument.
(footnote: 32)  Even though the note is not governed by the Commerce Code, the endorsements on the note do constitute more than a scintilla of evidence of the assignments of title, and therefore ownership, from the FDIC to Diversified and from Diversified to Southeast.
(footnote: 33)  

The Firm argues that there is a break in the chain of title from Commonwealth to the FDIC.  12 U.S.C.A. §1821(d)(2)(A) provides that “[t]he Corporation shall, as conservator or receiver, and by operation of law, succeed to—(i) all rights, titles, powers, and privileges of the insured depository institution” over which it is appointed.
(footnote: 34)  Essentially, the FDIC “steps into the shoes” of the failed bank and acquires the rights to the assets held by that bank prior to receivership.
(footnote: 35)  Accordingly, an assignment is not required in order to transfer ownership of a non-negotiable note from a financial institution to the FDIC when the financial institution is placed into receivership.
(footnote: 36) 

The Firm further argues that Diversified offered no evidence of the transfer of the note from the FDIC as receiver (“FDIC-R”) to the FDIC-C, and therefore another break in the chain of title exists.  “Section 1823(d)(3)(a) gives [FDIC-C] the same rights and powers as [FDIC-R] under § 1821. . . .”
(footnote: 37)  By virtue of sections 1823(d)(3)(a) and 1821(d)(2)(A) Hill Gilstrap’s argument fails because an endorsement from the FDIC-R to the FDIC-C is not required.
(footnote: 38)  

The note shows on its face the FDIC-C’s endorsement to Systems.  Disregarding any conflicting statements and reviewing the evidence in the light most favorable to Diversified, the endorsements on the note provide more than a scintilla of probative evidence of Diversified’s ownership of the note.
(footnote: 39)  We sustain Diversified’s second issue as to Southeast’s claim that it is the owner and holder of the note. 

3.  The Guaranties

The Firm argues in its motion for summary judgment that Diversified does not have any evidence that it is the owner and holder of the guaranties made by Heard and Hill individually.  Olson attached copies of Heard and Hill’s guaranties to his affidavit and swore that the photocopies were true and correct copies of the originals.  The trial court struck neither the guaranties nor Olson’s statement in his affidavit.

The language of each guaranty states that Heard and Hill agreed 

to pay to Commonwealth Bank . . . hereinafter called Creditor, its successor or assigns . . . any and all indebtedness which Hill, Heard, Oneal, Gilstrap & Goetz, P.C. . . . may now or at any time hereafter owe said Creditor, together with interest and collection costs.

There is no dollar limitation on the guaranties except for the amount due on the note.  Therefore, according to the terms of the guaranties and because Diversified included sworn copies of the original guaranties which are in Diverified’s possession,
(footnote: 40) Diversified has established more than a scintilla of evidence to overcome Hill Gilstrap’s summary judgment motion as to the ownership of the guaranties and as to the amount owed on the guaranties.
(footnote: 41)  We sustain Diversified’s second and fourth issues as they pertain to the guaranties.

B.  Statute of Limitations

In its fifth issue, Diversified complains that the trial court erred in granting the Firm summary judgment because the Firm did not present any evidence in support of its statute of limitations affirmative defense and, alternatively, if the Firm offered such evidence of the affirmative defense, Diversified adduced summary judgment proof establishing that the claim is not time-barred.  Because Diversified’s third issue also addresses the application of the statute of limitations, we consider both of these issues together.  We hold that Diversified raised a material fact issue regarding the statute of limitations.

1.  The Four-Year Statute of Limitations

Generally, a suit on a note must be filed within four years from the date the cause of action accrues.
(footnote: 42)  The Firm argued in its motion for summary judgment that because the note upon which Systems bases its claims shows a maturity date of May 1, 1990, and because the trial court can take judicial notice of the date Systems filed this lawsuit,
(footnote: 43) which was October 4, 1995, on the face of the pleadings Systems’s claims are barred by the statute of limitations.
(footnote: 44)  Therefore, the Firm argued, it has conclusively proven the affirmative defense, and Diversified has no evidence to prove otherwise. 

Diversified argues that this improperly places the burden of proof of the affirmative defense on the plaintiffs—Diversified, and even if the Firm’s argument is true, Diversified has proven that the FDIC took over Commonwealth as receiver and that, consequently, a longer statute of limitations applies to the note and does not bar the claim.

In a motion for summary judgment, once the affirmative defense is established, the burden shifts to the nonmovant-plaintiff to proffer summary judgment evidence raising a fact issue to avoid the affirmative defense.
(footnote: 45)
2.  The Six-Year Statute of Limitations

A successor to the FDIC’s interest in a note may be entitled to the six-year statute of limitations found in 12 U.S.C.A. § 1821(d)(14).
(footnote: 46)  The Financial Institutions Reform, Recovery, and Enforcement Act provides that “the applicable statute of limitations with regard to any action brought by the [FDIC] as conservator or receiver shall be . . . the 6-year period beginning on the date the claim accrues.”
(footnote: 47)  This limitations provision extends to the benefit of purchasers of assets from the FDIC.
(footnote: 48)
 The Firm argues that because Diversified failed to prove that Commonwealth was placed under FDIC receivership, the six-year statute of limitations does not apply.  Specifically, the Firm alleges that:  (1) there is no evidence that the note ever belonged to the FDIC-R; (2) the note itself shows only an endorsement by the FDIC 
in its corporate capacity
; and (3) the FDIC-C and the FDIC-R are separate entities. 

Whether the FDIC-C and the FDIC-R are separate entities is irrelevant to resolve this issue.
(footnote: 49)  12 U.S.C.A. § 1823(d)(3) states in pertinent part as follows:

(d) Sale of assets to Corporation

. . . . 

(3) Rights and powers of Corporation

(A)
 
In general
  

With respect to any asset acquired or liability assumed pursuant to this section, the Corporation shall have all of the rights, powers, privileges, and authorities of the 
Corporation as receiver
 under sections 1821 . . . of this title.
(footnote: 50)

Accordingly, to overcome the Firm’s summary judgment motion, Diversified must come forward with evidence that raises a genuine issue of a material fact
(footnote: 51) that the note was in default either before the FDIC acquired the note or during its ownership of the note.
(footnote: 52)
3.  Application to Systems

The note was attached to the Olson affidavit and admitted into summary judgment evidence.  The face of the note shows that the FDIC, in its corporate capacity, endorsed the note made payable to Systems.  Reviewing the evidence in the light most favorable to Diversified, we hold that Diversified brought forth more than a scintilla of evidence that Systems’s claim is not time-barred.

4.  Application to Southeast

In its summary judgment motion the Firm argues that Southeast is not only barred by the four-year statute of limitations, but if the court determines that the six-year limitation applies, then it is also barred by the six-year limitation because Southeast intervened more than six years after the note matured.  When an intervener sues on the same note that was in issue when the original petition was filed, introduces no new causes of action against the defendant, and does not change the allegations against the defendant, the intervention does not constitute a new cause of action such that the statute of limitations would apply.
(footnote: 53)  We sustain Diversified’s third and fifth issues.

IV.  Conclusion

Having held that Diversified raised material fact issues on its claims and on the Firm’s affirmative defense, we reverse the trial court’s summary judgment for the Firm and remand the case to the trial court for trial on the merits.

LEE ANN DAUPHINOT

JUSTICE

PANEL A: CAYCE, C.J.; DAY and DAUPHINOT, JJ.

CAYCE, C.J. concurs without opinion.

[DELIVERED FEBRUARY 13, 2003]

FOOTNOTES
1:
T
ex. 
R
. 
C
iv. 
P
.
 166a(i).  

2:
Id.
;
 In re Mohawk Rubber Co.
, 982 S.W.2d 494, 497-98 (Tex. App.—Texarkana 1998, orig. proceeding).
  

3:
See
 
Tex. R. Civ. P.
 166a(i) cmt.; 
Moore v
. K Mart Corp
., 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied); 
Jackson v. Fiesta Mart
,
 Inc
., 979 S.W.2d 68, 71 (Tex. App.—Austin 1998, no pet.).

4:
Frazier v. Yu
, 987 S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet. denied);
 Moore
, 981 S.W.2d at 269.
  

5:
Szczepanik v. First S. Trust Co.
, 883 S.W.2d 648, 649 (Tex. 1994).  

6:
Moore
, 981 S.W.2d at 269. 

7:
Commercial Servs. of Perry
,
 Inc. v. Wooldridge
, 968 S.W.2d 560, 564 (Tex. App.—Fort Worth 1998, no pet.).

8:
Nat’l Liab. & Fire Ins. Co. v. Allen
, 15 S.W.3d 525, 527-28 (Tex. 2000); 
see also James v. Kloos
, 75 S.W.3d 153, 159 (Tex. App.—Fort Worth 2002, no pet.).

9:
Owens-Corning Fiberglas Corp. v. Malone
, 972 S.W.2d 35, 43 (Tex. 1998).

10:
See Garcia v. Martinez
, 988 S.W.2d 219, 222 (Tex. 1999); 
Downer v. Aquamarine Operators, Inc.
, 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).

11:
Downer
, 701 S.W.2d at 241-42.

12:
Davis v. Huey
, 571 S.W.2d 859, 862 (Tex. 1978); 
see also Goode v. Shoukfeh
, 943 S.W.2d 441, 446 (Tex. 1997).

13:
Holley v. Holley
, 864 S.W.2d 703, 706 (Tex. App.—Houston [1
st
 Dist.] 1993, writ denied). 

14:
See
 
id.

15:
See James
, 75 S.W.3d at 159.

16:
See Jansen v. Fitzpatrick
, 14 S.W.3d 426, 431 (Tex. App.—Houston [14
th
 Dist.] 2000); 
see also Horizon/CMS Healthcare Corp. v. Auld
, 34 S.W.3d 887, 905 (Tex. 2000); 
see also Holy Cross Church of God in Christ v. Wolf
, 44 S.W.3d 562, 568 (Tex. 2001).

17:
T
ex. 
R
. 
E
vid.
 801(d).

18:
T
ex. 
R
. 
C
iv. 
P
roc.
 166(f).

19:
See 
T
ex. 
R
. 
E
vid.
 803(6).

20:
Daimler-Benz Aktiengesellschaft v. Olson
, 21 S.W.3d 707, 716 (Tex. App.—Austin), 
pet. dism’d w.o.j.
, 53 S.W.3d 308 (Tex. 2000).

21:
See
 
T
ex. 
R
. Evid.
 803(6).

22:
See Garcia
, 988 S.W.2d at 222.

23:
See James
, 75 S.W.3d at 159.

24:
Martin v. First Republic Bank
, 799 S.W.2d 482, 485 (Tex. App.—Fort Worth 1990, writ denied); 
see also Stucki v. Noble
, 963 S.W.2d 776, 782 (Tex. App.—San Antonio 1998, pet. denied).

25:
Hudspeth v. Investor Collection Servs. Ltd. P’ship
, 985 S.W.2d 477, 479 (Tex. App.—San Antonio 1998, no pet.).

26:
See James
, 75 S.W.3d at 159.

27:
See Moore
, 981 S.W.2d at 269.

28:
See Szczepanik
, 883 S.W.2d at 649.

29:
See 
Tex. Bus. & Com. Code
 A
nn. 
§§ 3.104(a), 3.106 (Vernon 2002); 
see also Dillard v. NCNB Tex. Nat’l Bank
, 815 S.W.2d 356, 360 (Tex. App.—Austin 1991, no writ).

30:
See 
Tex. Bus. & Com. Code
 A
nn. 
§ 3.201; 
see also Dillard
,
 
815 S.W.2d at 360.

31:
Tex. Bus. & Com. Code
 A
nn. 
§ 3.104(a).

32:
See id.

33:
See Dillard
, 815 S.W.2d at 360.

34:
12 U.S.C.A. § 1821(d)(2)(A)
 (West 2001).

35:
O’Melveny & Myers v. FDIC
, 512 U.S. 79, 86, 114 S. Ct. 2048, 2054 (1994); 
see also
 
12 U.S.C.A. § 1821(d)(2)(A)
.

36:
See id.

37:
Geiselman v. Cramer Fin. Group, Inc.
, 965 S.W.2d 532, 540 (Tex. App.—Houston [14
th
 Dist.] 1997, no pet.) (citing 
FDIC v. Howse
, 736 F. Supp. 1437, 1445 (S.D. Tex. 1990)); 
see also
 
12 U.S.C.A. § 1823(d)(3)(A).

38:
Bosque Asset Corp. v. Greenberg
, 19 S.W.3d 514, 520 (Tex. App.—Eastland 2000, pet. denied), 
overruled on other grounds by Hight v. Dublin Veterinary Clinic,
 22 S.W.3d 614, 618 (Tex. App.—Eastland 2000, no pet.); 
see 
12 U.S.C.A. §§ 1821(d)(2)(A), 1823(d)(3)(A);
 see also Boyd v. Diversified Fin. Sys.
, 1 S.W.3d 888, 891-92 (Tex. App.—Dallas 1999, no pet.); 
see also FDIC v. Patel
, 46 F.3d 482, 485 (5
th
 Cir. 1995).

39:
Dillard
 815 S.W.2d at 360.

40:
See Boyd
, 1 S.W.3d at 893.

41:
See Moore
, 981 S.W.2d at 269. 

42:
Tex. Civ. Prac. & Rem. Code Ann.
 § 16.004(a)(3) (Vernon 2002).

43:
See Attorney Gen. v. Duncan
, 929 S.W.2d 567, 570-71 (Tex. App.—Fort Worth 1996, no writ).

44:
See
 T
ex. 
C
iv. 
P
rac. & 
R
em. 
C
ode Ann.
 § 16.004(a)(3).

45:
See Ryland Group
,
 Inc. v. Hood
, 924 S.W.2d 120, 121 (Tex. 1996).

46:
Jackson v. Thweatt
, 883 S.W.2d 171, 176 (Tex. 1994); 
see also FDIC,
 736 F. Supp. at 1445.

47:
12 U.S.C.A. § 1821(d)(14)(A) (West 2001).

48:
Jackson
, 883 S.W.2d at 176.

49:
See 
12 U.S.C.A. § 1823(d)(3)(A); 
see also Geiselman
, 965 S.W.2d at 540.

50:
12 U.S.C.A. § 1823(d)(3)(a) (emphasis added).

51:
See 
Tex. R. Civ. P.
 166a(i) cmt.
; see also Moore
, 981 S.W.2d at 269.

52:
See Geiselman
, 965 S.W.2d at 540.

53:
Bosque Asset Corp.
, 19 S.W.3d at 522; 
see also Russell v. People’s Nat’l Bank
, 2 S.W.2d 961, 962 (Tex. App.—Austin 1928, writ ref’d).