COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-057-CV
 
 
FFP 
MARKETING COMPANY, INC.                                           APPELLANT
 
V.
 
LONG 
LANE MASTER TRUST IV                                               APPELLEES
AND 
MTGLQ INVESTORS, L.P.
  
------------
 
FROM 
THE 67TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
        Appellant 
FFP Marketing Company, Inc. (“FFP Marketing”) appeals from a summary 
judgment granted by the trial court in favor of Appellees Long Lane Master Trust 
IV (“LLMT”) and MTGLQ Investors, L.P. (“MTGLQ”). In six issues, FFP 
Marketing complains that the trial court erred in granting LLMT and MTGLQ’s 
motion for summary judgment because: (1) LLMT, as a trust, did not have capacity 
to bring this suit except through a trustee, (2) the amount of the final 
judgment cannot be calculated from either the face of the judgment or the 
summary judgment record, (3) LLMT and MTGLQ did not conclusively prove legal 
ownership of the notes and guaranties, (4) the trial court erred by overruling 
FFP Marketing’s special exceptions to LLMT and MTGLQ’s motion for summary 
judgment, (5) the trial court erred by overruling FFP Marketing’s objections 
to LLMT and MTGLQ’s summary judgment evidence, and (6) the trial court erred 
by granting a permanent injunction to LLMT and MTGLQ where none was requested in 
their motion for summary judgment. Because we hold that LLMT and MTGLQ failed to 
prove their claims as a matter of law, we reverse the trial court’s final 
judgment, including the injunction, and remand this case for trial on the 
merits.
I. Background 
Facts
        FFP 
Operating Partners, L.P. (“FFP Operating”) operates a number of convenience 
stores and gas stations. In February and June of 1999, FFP Operating executed 
thirty-one promissory notes (the “Long Lane notes”) in favor of Franchise 
Mortgage Acceptance Company (“FMAC”). In connection therewith, FFP Marketing 
executed guaranties of payment (the “Long Lane guaranties”) in favor of FMAC 
for all thirty-one notes. FFP Operating also executed two additional notes in 
June of 1999 (the “MTGLQ notes”) in favor of FMAC with corresponding 
guaranties (the “MTGLQ guaranties”) by FFP Marketing. Loan and security 
agreements were executed in connection with all thirty-three transactions.
        LLMT 
and MTGLQ assert that Bay View Franchise Mortgage Acceptance Company (“Bayview 
FMAC”) became the successor in interest to FMAC with respect to the notes, 
guaranties, and associated loan documents and, in turn, assigned all of its 
interests to LLMT and MTGLQ. LLMT and MTGLQ also assert that since January 11, 
2003, FFP Operating has failed to make payments on the notes as scheduled and 
therefore has been in default of its obligations under the Long Lane notes and 
the MTGLQ notes. On January 20, 2003, LLMT gave notice to FFP Operating of the 
defaults, accelerated the obligations under the Long Lane notes, and demanded 
payment. MTGLQ did the same with respect to the MTGLQ notes on February 21, 
2003.
        On 
August 20, 2003, LLMT and MTGLQ again sent default notices to FFP Operating and 
demanded payment under the guaranties from FFP Marketing. The notes went unpaid. 
LLMT asserts that as of September 8, 2003, the outstanding principal under the 
Long Lane notes was $13,212,199.30, with unpaid interest of $1,488,899.04, and 
late fees of $9,610.00. Likewise, MTGLQ asserts that as of the same date, the 
outstanding principal balance under the MTGLQ notes was $373,832.94, with unpaid 
interest of $41,059.29, and late fees of $917.52.
        On 
April 24, 2003, LLMT and MTGLQ filed suit against FFP Operating and FFP 
Marketing (collectively “the FFPs”) as a result of the alleged defaults 
under the thirty-three separate notes and guaranties. LLMT and MTGLQ 
subsequently filed a combined motion for summary judgment on their respective 
claims of default under the thirty-three notes and guaranties for the amounts 
due as of September 8, 2003.
        In 
support of their motion for summary judgment, LLMT and MTGLQ offered the 
affidavit of Bradford A. Wagoner, Vice President of Asset Management of America, 
LLC, the general partner of Asset Management Company of America, L.P., the 
servicer of the Long Lane and MTGLQ notes, guaranties, and related loan 
documents. Attached to the Wagoner affidavit are sworn copies of those 
documents. In response, the FFPs amended their original answer to include a 
verified denial challenging LLMT’s capacity to sue. They also filed a response 
to LLMT and MTGLQ’s motion for summary judgment which included special 
exceptions to the summary judgment motion and evidence. Finally, the FFPs filed 
objections to the Wagoner affidavit.
        The 
trial court held a hearing on the motion for summary judgment and on the 
objections and special exceptions filed by the FFPs. Before the trial court 
ruled, however, FFP Operating filed for bankruptcy protection under chapter 11 
of the Bankruptcy Code and was nonsuited from this cause. The trial court 
entered a final judgment that expressly granted LLMT and MTGLQ’s motion for 
summary judgment against FFP Marketing, overruled all of FFP Marketing’s 
special exceptions and objections to summary judgment evidence, and included an 
injunction pursuant to Texas Civil Practice and Remedies Code section 52.006(e).[1]  This appeal resulted.
II. Summary 
Judgment on the Notes and Guaranties
A. Standard of Review
        In 
a summary judgment case, the issue on appeal is whether the movants met their 
summary judgment burden by establishing that no genuine issue of material fact 
exists and that the movants are entitled to judgment as a matter of law.[2]  The burden of proof is on the movants, and all 
doubts about the existence of a genuine issue of material fact are resolved 
against the movants.[3]  Therefore, we must view 
the evidence and its reasonable inferences in the light most favorable to the 
nonmovant.[4]
        In 
deciding whether there is a material fact issue precluding summary judgment, all 
conflicts in the evidence are disregarded and the evidence favorable to the 
nonmovant is accepted as true.[5]  Evidence that 
favors the movants' position will not be considered unless it is uncontroverted.[6]  The summary judgment will be affirmed only if the 
record establishes that the movants have conclusively proved all essential 
elements of the movants' cause of action or defense as a matter of law.[7]
B. Ownership of the Notes and Guaranties
1. Parties’ Contentions
        In 
its third issue, FFP Marketing contends that the trial court erred in granting 
summary judgment because LLMT and MTGLQ failed to prove conclusively their legal 
ownership of the respective thirty-three notes and guaranties. LLMT and MTGLQ 
respond that the notes are negotiable instruments governed by the Texas Uniform 
Commercial Code, that Texas law requires that they establish that they either 
own or hold the notes and guaranties, and that they established their 
status as holders of the notes and guaranties. Further, they point out that FFP 
Marketing has not denied under oath FFP Operating’s execution of the notes, 
its own execution of the guaranties, or the assignment of the notes and 
guaranties to LLMT and MTGLQ. LLMT and MTGLQ assert that absent such a sworn 
challenge, the notes, guaranties and other loan documents are to be received 
into evidence as fully proved. Accordingly, they argue that no issue of material 
fact exists as to this element of their cause of action.
        In 
reply, FFP Marketing asserts that this court, along with most other Texas courts 
of appeals, has historically required a promissory note claimant to prove that 
he is both the owner and holder of the promissory note. In addition, FFP 
Marketing asserts that the Wagoner affidavit is internally inconsistent and thus 
insufficient to support summary judgment. FFP Marketing also argues that LLMT 
and MTGLQ cannot for the first time on appeal assert their entitlement to 
summary judgment under the Texas Uniform Commercial Code because LLMT and MTGLQ 
did not plead or prove the elements of a suit on a negotiable instrument. In 
particular, FFP Marketing argues that LLMT and MTGLQ have not proven that the 
notes are negotiable instruments subject to article 3 of the Texas Uniform 
Commercial Code.
 
2. The Thirty-three Promissory Notes are not Negotiable Instruments;
Proof of Ownership is Therefore Required
 
        The 
Texas version of the Uniform Commercial Code (“the Code”) recognizes that 
the holder of a negotiable instrument has the right to enforce the instrument 
whether or not he is the instrument’s lawful owner.[8]  
Under the Code, the “holder” of a financial instrument is “[t]he person in 
possession of a negotiable instrument that is payable either to bearer or to an 
identified person that is the person in possession.”[9]  
However, to be subject to the Code’s governance, a promissory note must be a 
negotiable instrument.[10]  A promissory note is 
a negotiable instrument subject to the Code if it is a written unconditional 
promise to pay a sum certain in money, upon demand or at a definite time, and is 
payable to order or to bearer.[11]  The 
negotiability of an instrument is a question of law.[12]
        In 
the case before us, both the Long Lane notes and the MTGLQ notes broadly define 
the maker’s liability to include obligations found outside the four corners of 
the instruments.  That is, each note includes the following:
    

FOR VALUE RECEIVED, the Borrower promises to pay to the order of the Lender the 
Principal Amount specified above, together with interest, according to the 
following terms and conditions:
 
1.DEFINITIONS. . 
. .

                . 
. . .
 
“Obligations”:  All indebtedness and all 
liability, responsibility and obligation of the Borrower, each Guarantor or any 
of their respective Affiliates to the Lender or to any of the Lender’s 
Affiliates for payment or performance, whether accrued or contingent, whether 
direct or indirect, whether arising from tort, contract, or otherwise, and 
whether incurred in the capacity of maker, co-indorser or obligor or as surety, 
guarantor or in any other capacity, under:  (I) this Note, (ii) the Loan 
Agreement, (iii) the Indenture, (iv) each Guaranty, (v) the other Loan 
Documents, or (vi) any other present or future agreement, commitment, 
undertaking, instrument or obligation of the Borrower to the Lender or any 
Affiliate of the Lender with respect to the Facility, including any future 
advances (whether or not pursuant to a written commitment); in each case whether 
due or to become due or whether now existing or subsequently incurred or 
arising.  The term “Obligations” 
specifically includes but is in no way limited to principal, accrued interest 
and late payment processing fees under this Note, all advances made by or on 
behalf of the Lender under the Loan Agreement, the Indenture or any other Loan 
Document, and all collection and other costs and expenses incurred by or on 
behalf of the Lender, whether incurred before or after judgment, and 
specifically includes all Obligations, as such term is defined in the Indenture.

This 
overarching definition is referenced in several sections of the notes, including

•      section 
2.7, stating that default interest “shall accrue on the outstanding Principal 
Amount of this Note and the other Obligations at the Default Rate”;
 
•      section 
3.1, discussing “security for the payment and performance of this Note and the 
other Obligations”;
 
•      section 
5.1, stating that, upon the occurrence of a Default Event, “[t]his Note and 
all of the other Obligations shall at the option of the Lender become 
immediately due and payable without further notice or demand”;
 
•      section 
5.3, stating that, after a Default Event, “[t]he Lender may, immediately and 
without notice, hold, apply, freeze or set-off, on account of any Obligation, 
(I) funds on deposit with the Lender . . ., (ii) any funds that the Lender . . . 
may owe to the Borrower or any Guarantor . . . ; and (iii) any other funds or 
property, tangible or intangible, in or en route to the Lender’s . . . 
possession or control belonging or owed to the Borrower, [or] any Guarantor”; 
and
 
•      section 
7.2., providing that the “Lender shall be under absolutely no duty . . . 
whatsoever to . . . seek repayment of any Obligation from any particular 
source.”
 
The 
presence of this definition in the notes defeats the sum certain requirement 
because one cannot determine from the face of each note the extent of the 
maker’s liability.[13]
        In 
addition, the notes fail the requirement for an unconditional promise because 
each note specifically “incorporates by reference” the terms of other 
documents, requiring one to examine those documents to determine if they place 
conditions on payment.[14]  Although a promise 
is not made conditional by reference to a separate writing for information 
regarding rights and obligations with respect to collateral,[15] 
here, as security for each note’s payment and performance, each note 
incorporates by reference the terms of both the loan and indenture 
agreements executed in conjunction with the transaction:[16]
  
        3.     SECURITY.
  
3.1.Loan 
Agreement; Indenture.  As security for the payment and 
performance of this Note and the other Obligations, the Borrower has today 
signed and delivered the Loan Agreement and the Indenture (as defined in the 
Loan Agreement), granting the Lender a first lien and security interest in the 
“Collateral” and the “Trust Property”, as defined in the Loan 
Agreement.  All of the terms of the Loan Agreement and the Indenture are 
incorporated into this Note by reference, with the same effect as if they were 
reprinted here in full.
 
 
Each 
note also incorporates by reference the waivers, consents, and acknowledgments 
of the maker found in other loan documents.[17]  
Thus, each note is governed by the terms of another writing, requiring one to 
look outside the note to determine if payment is conditional or if the terms of 
that document alter the rights with respect to payment.  Accordingly, we 
conclude that the notes in this case are not negotiable instruments.[18]  Because the promissory notes in this case are not 
negotiable instruments, the Code does not govern their enforcement; contract law 
does.
        While 
negotiation or assignment can change ownership of a promissory note,[19] the endorsement of a non-negotiable promissory note does 
not create a presumption of ownership in the transferee.[20]   
Thus, to recover on a non-negotiable promissory note, the holder must establish 
his status as the instrument’s legal owner.[21]  
This same proof is required to establish LLMT and MTGLQ’s right to recover on 
the promissory notes through the guaranties.[22]  
A general denial is sufficient to raise the issue of legal ownership and places 
the burden on the plaintiff to prove his status.[23]
3. LLMT and MTGLQ’s Evidence of Ownership Is 
Internally Controverting
        In 
support of their motion for summary judgment, LLMT and MTGLQ offered the 
affidavit of Bradford A. Wagoner, Vice President of their loan servicing 
agent.  Attached to the Wagoner affidavit are sworn copies of the notes, 
guaranties, and related loan documents, including assignment documents 
evidencing assignment of the mortgages from Bay View FMAC (the alleged successor 
in interest to FMAC) to LLMT and MTGLQ.  FFP Marketing filed no sworn 
challenge to the execution of the notes, guaranties, or related loan documents, 
or to the genuineness of the assignment of those instruments to LLMT and MTGLQ. 
On appeal, LLMT and MTGLQ argue, in effect, that FFP Marketing’s failure to 
file a verified plea challenging the execution of the instruments or the 
genuineness of the assignments precludes it from asserting that the evidence is 
insufficient to prove as a matter of law that LLMT and MTGLQ are both the legal 
owners and holders of the respective notes and guaranties.  We disagree.
        The 
absence of a sworn plea challenging the execution of an instrument or the 
genuineness of an assignment only affects waiver of a challenge to the execution 
of the instrument or the genuineness of the assignment; it does not preclude a 
party from arguing that the evidence is insufficient to support summary judgment.[24]  Thus, FFP Marketing is not precluded on appeal 
from arguing that the evidence is insufficient to establish LLMT’s and 
MTGLQ’s status as legal owners and holders of the notes and guaranties.
        On 
the other hand, a photocopy of a note attached to the affidavit of the holder, 
who swears that it is a true and correct copy of the note, is sufficient as a 
matter of law to prove the status of owner and holder of the note absent 
controverting summary judgment evidence.[25]  In 
this case, however, controverting evidence is provided by the Wagoner affidavit 
and attachments.  Specifically, FFP Marketing asserts that the Wagoner 
affidavit is internally inconsistent, and thus insufficient to support summary 
judgment, because Wagoner asserts in the affidavit that LLMT and MTGLQ are the 
beneficial owners and holders of the notes and guaranties, not the 
instruments’ lawful owners.  We agree.
        Rule 
166a(c) of the Texas Rules of Civil Procedure provides in part that a summary 
judgment may be based on uncontroverted testimonial evidence of an interested 
witness if the evidence is clear, positive, direct, otherwise credible, free 
from contradictions and inconsistencies, and could have been readily 
controverted.[26]  Here, the affidavit testimony 
of Wagoner directly contradicts the summary judgment evidence attached to his 
affidavit. In his affidavit, Wagoner states that LLMT is the current “holder 
and beneficial owner” of the Long Lane notes, the Long Lane guaranties, and 
related loan documents.  Likewise, in his affidavit, Wagoner states that 
MTGLQ is the current “holder and beneficial owner” of the MTGLQ notes, the 
MTGLQ guaranties, and related loan documents.  But attached to the Wagoner 
affidavit are copies of the notes, guaranties, and related loan documents, 
including evidence of assignment of legal ownership of those documents to 
LLMT and MTGLQ.
        In 
his affidavit, Wagoner does not explain the inconsistency between the assertion 
in the affidavit that the ownership is beneficial and the implication in the 
attachments that the ownership is legal, nor do LLMT and MTGLQ attempt to 
explain the inconsistency on appeal.  This inconsistency is sufficient to 
raise an issue because there is a difference under Texas law between the 
beneficial or equitable owner of a promissory note and the note’s legal owner.[27]
        For 
example, under Texas law, the legal owner of a promissory note may maintain a 
cause of action even though actual or beneficial ownership of the note lies in 
another.[28]  The beneficial owner of a 
promissory note is not even a necessary party to a suit on the note.[29]  Importantly, it is legal ownership that must be 
proved to enforce a note.[30]  Thus the 
inconsistency between the Wagoner affidavit and its attachments is sufficient to 
establish a genuine issue of material fact precluding summary judgment.[31]  Resolving all conflicts in the evidence in favor 
of FFP Marketing, we hold that a genuine issue of material fact exists as to the 
current ownership of the notes and guaranties; consequently, LLMT and MTGLQ did 
not prove legal ownership of the notes and guaranties as a matter of law.[32]   Accordingly, we sustain FFP Marketing’s 
third issue.
        Because 
of our disposition of this issue we need not address the remainder of FFP 
Marketing’s issues; in the interest of judicial economy, however, we will 
address FFP Marketing’s fourth issue to the extent that it argues that LLMT 
and MTGLQ failed to conclusively prove the current balance due under the notes 
and guaranties.[33]
C. Amount Due
        In 
its fourth point, FFP Marketing contends that the trial court erred by granting 
summary judgment based on an aggregated amount due and owing on the thirty-three 
separate promissory notes and guaranties. In addition, FFP Marketing asserts 
that the trial court erred in granting summary judgment because LLMT and MTGLQ 
failed to establish the applicable rate of interest on each note as a matter of 
law.
        In 
a cause of action on a promissory note, the plaintiff must establish the amount 
due on the note.[34]  Generally, an affidavit 
that sets forth the total balance due on a note is sufficient to sustain an 
award of summary judgment.[35]   Detailed 
proof of the balance is not required.[36]   
However, the summary judgment evidence must establish the applicable rate of 
interest on a note as a matter of law, otherwise the movants have failed to meet 
their summary judgment burden to establish the amount due on the note.[37]   Further, where an affidavit submitted in 
support of summary judgment lumps the amounts due under multiple notes with 
varying terms and provisions, an ambiguity can arise as to the balance due, 
precluding summary judgment.[38]
        In 
the case before us, each note provides for interest at the lesser of the 
interest rate specified in the note or at the highest rate allowed by 
Connecticut law. Similarly, in the event of default, each note provides for 
interest at the lesser of five percent over the note rate or the highest rate 
allowed by Connecticut law.  Because nothing in the summary judgment 
evidence establishes the highest rate allowed under Connecticut law or, 
consequently, the actual default rate charged on any single note, we conclude 
that the evidence is insufficient to prove the applicable rate of interest for 
each note as a matter of law. [39]
        Further, 
Wagoner’s affidavit provides that as of September 8, 2003, FFP Marketing owed 
$13,212,199.30 in principal, $1,488,899.04 in interest, and $9,610.00 in late 
fees, for a total of $14,710,708.34 on the thirty-one Long Lane notes.  
Similarly, the affidavit also provides that as of the same date, FFP Marketing 
owed $373,832.94 in principal, $41,059.28 in interest, and $917.52 in late fees, 
for a total of $415,809.24 on the two MTGLQ notes.
        FFP 
Marketing argues that Wagoner is an interested witness and that by providing 
only aggregated amounts due respectively under the thirty-one Long Lane notes 
and the two MTGLQ notes, the Wagoner affidavit fails the requirement of rule 
166a(c) that an interested witness affidavit be easily controvertible.[40]  Specifically, FFP Marketing argues that the 
assertion of an aggregated amount due effectively denied it the opportunity at 
the trial court level to controvert the alleged amounts due on each note.
        LLMT 
and MTGLQ respond that the assertion of a lump sum is sufficient to establish 
the amounts due on each note.  In support of their assertion, LLMT and 
MTGLQ argue that this court, in L&T Charters, Inc. v. American National 
Leasing Company, recently held that an affidavit asserting a single 
collective balance due under multiple leases was sufficient to established a sum 
certain.[41]  We disagree with LLMT and 
MTGLQ’s interpretation of our holding in that case. In L&T Charters, 
the issue was not whether the evidence was sufficient to support the 
motion for summary judgment, but rather, whether the final judgment was 
sufficiently certain so that it could be understood and enforced by a 
ministerial officer.[42]   Accordingly, 
this court’s holding in L&T Charters has no application to the case 
before us. After reviewing the summary judgment evidence, we conclude that the 
assertion of a lump sum balance, given multiple notes with varying principal 
balances and interest rates, creates an ambiguity sufficient to preclude summary 
judgment.[43]  Thus, because (1) no summary 
judgment evidence establishes the applicable interest rate on each note as a 
matter of law, and (2) an ambiguity exists in the summary judgment proof as to 
the amounts due on each note, we hold that LLMT and MTGLQ failed to establish 
the amounts due on each note as a matter of law. [44]   
Accordingly, we sustain FFP Marketing’s fourth issue to the extent that it 
contends that LLMT and MTGLQ failed to conclusively prove the current balance 
due on each note and guaranty.
III. Conclusion
        Having 
held that LLMT and MTGLQ failed to establish as a matter of law (1) legal 
ownership of the promissory notes and guaranties and (2) the amount due on each 
note and guaranty, we reverse the trial court’s final judgment, including the 
injunction, and remand the case to the trial court for trial on the merits.
   
                                                          LEE 
ANN DAUPHINOT
                                                          JUSTICE
 
 
  
PANEL 
B:   LIVINGSTON, DAUPHINOT, and GARDNER, JJ.
 
  
DELIVERED: 
July 7, 2005

 
NOTES
1.  
Tex. Civ. Prac. & Rem. Code Ann. 
§ 52.006(e) (Vernon Supp. 2004-05).
2.  
Tex. R. Civ. P. 166a(c); S.W. 
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of Houston 
v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).
3. 
S.W. Elec. Power Co., 73 S.W.3d at 215; Sci. Spectrum, Inc. v. 
Martinez, 941 S.W.2d 910, 911 (Tex. 1997); Great Am. Reserve Ins. Co. v. 
San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).
4. 
Great Am., 391 S.W.2d at 47.
5. 
Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 
1995).
6. 
Great Am., 391 S.W.2d at 47.
7. 
Clear Creek Basin, 589 S.W.2d at 678.
8. 
Tex. Bus. & Com. Code Ann. § 
3.301 (Vernon 2002); Jernigan v. Bank One, 803 S.W.2d 774, 776 (Tex. 
App.—Houston [14th Dist.] no writ) (indicating the Texas Business and Commerce 
Code allows for recovery by either the owner or holder of a promissory note).
9. 
Tex. Bus. & Com. Code Ann. § 
1.201(21)(A) (Vernon Supp. 2004-05).
10. 
See id. § 3.102(a) (Vernon 2002).
11. 
Id. § 3.104(a); Diversified Fin. Sys., Inc. v. Hill, Heard, O’Neal, 
Gilstrap, & Goetz, P.C., 99 S.W.3d 349, 357 (Tex. App.— Fort Worth 
2003, no pet.).
12. 
Cartwright v. Mbank Corpus Christi, N.A., 865 S.W.2d 546, 549 (Tex. 
App.—Corpus Christi 1993, writ denied).
13. 
See Tex. Bus. & Com. Code Ann. 
§ 3.104(a); Bailey, Vaught, Robertson and Co. v. Remington Invs., Inc., 
888 S.W.2d 860, 864 (Tex. App.—Dallas 1994, no writ) (indicating “sum 
certain” requirement is designed to provide commercial certainty in transfer 
of negotiable instruments and to make negotiable instruments functional 
equivalent of money).
14. 
See Tex. Bus. & Com. Code Ann. 
§ 3.106(a).
15. 
See id § 3.106(b).
16. 
See Resolution Trust Corp. v. 1601 Partners, Ltd., 796 F. Supp. 238, 240 
(N.D. Tex. 1992) (holding promissory note non-negotiable where deed of trust was 
incorporated by reference into promissory note).
17. 
See Cont’l Nat’l Bank of Fort Worth v. Conner, 147 Tex. 218, 214 
S.W.2d 928, 931 (1948) (indicating that an otherwise negotiable instrument can 
be rendered non-negotiable if it is burdened with the conditions of another 
agreement).
18. 
See Tex. Bus. & Com. Code Ann. 
§§ 3.104(a), 3.106(a); Cont’l Nat’l Bank of Fort Worth, 214 S.W.2d 
at 931; Bailey, Vaught, Robertson and Co., 888 S.W.2d at 864; Resolution 
Trust Corp., 796 F. Supp. at 240.
19. 
See Dillard v. NCNB Tex. Nat’l Bank, 815 S.W.2d 356, 360 (Tex. 
App.—Austin 1991, no writ), overruled on other grounds, Amberboy v. 
Societe de Banque Privee, 831 S.W.2d 793, 797 (Tex. 1992).
20. 
See Diversified Fin. Sys., 99 S.W.3d at 357.
21. 
See id. at 353; Dillard, 815 S.W.2d at 359 (requiring plaintiff to 
establish ownership to recover in case involving non-negotiable promissory 
note); see also Nitishin v. Fed. Debt Mgmt., Inc., No. 05-95-00531-CV, 
1996 WL 76232, at *4 (Tex. App.—Dallas Feb. 21, 1996, no writ) (not designated 
for publication) (indicating where a note is non-negotiable, a transferee can 
still recover as the owner of the note).
22. 
See Universal Metals & Mach., Inc. v. Bohart, 539 S.W.2d 874, 877-78 
(Tex. 1976).
23. 
See Tex. R. Civ. P. 92; Schindler 
v. AG Aero Distribs., Inc., 502 S.W.2d 581, 585 (Tex. Civ. App.—Corpus 
Christi 1973, no writ).
24. 
See Tex. R. Civ. P. 93(7), 
(8); Vahlsing v. Collier Cobb & Assocs. of Dallas, Inc., 560 S.W.2d 
117, 117-118 (Tex Civ. App.—Dallas 1977, no writ) (indicating failure to file 
sworn plea waives challenge to genuineness of assignment, it does not dispense 
with proof of the existence of the transfer); Am. Fiber Glass, Inc. v. Gen. 
Elec. Credit Corp., 529 S.W.2d 298, 300 (Tex. Civ. App.—Fort Worth 1975, 
writ ref’d n.r.e.) (indicating failure to file sworn plea waives challenge to 
execution of note, but that note must be introduced into evidence to prove its 
terms); see also Clear Creek Basin, 589 S.W.2d at 678 (indicating that 
failure to file response does not preclude one from arguing on appeal that 
evidence is insufficient as a matter of law to support summary judgment).
25. 
Zarges v. Bevan, 652 S.W.2d 368, 369 (Tex. 1983).
26. 
Tex. R. Civ. P. 166a(c).
27. 
See Russell v. People’s Nat’l Bank of Belton, 2 S.W.2d 961, 962 (Tex. 
Civ. App.—Austin 1928, writ ref’d); Rabb v. Seidel, 218 S.W. 607, 
610-11 (Tex. Civ. App.—San Antonio 1920), rev’d on other grounds, 250 
S.W. 420 (Tex. Comm. App. 1923).
28. 
Russell, 2 S.W.2d at 962; Rabb, 218 S.W. at 610-11.
29. 
Rabb, 218 S.W. at 611.
30. 
See Diversified Fin. Sys., 99 S.W.3d at 354.
31. 
See Tex. R. Civ. P. 
166a(c).
32. 
See Harwell, 896 S.W.2d at 173.
33. 
See Tex. R. App. P. 47.1.
34. 
See e.g., Diversified Fin. Sys., 99 S.W.3d at 357.
35. 
Martin v. First Republic Bank, Fort Worth, N.S., 799 S.W.2d 482, 485 
(Tex. App.—Fort Worth 1990, writ denied).
36. 
Hudspeth v. Investor Collection Servs. Ltd. P’ship, 985 S.W.2d 477, 479 
(Tex. App.—San Antonio 1998, no pet.).
37. 
See Bailey, Vaught, Robertson and Co., 888 S.W.2d at 867.
38. 
See Gen. Specialties, Inc. v. Charter Nat’l Bank—Houston, 687 S.W.2d 
772, 774 (Tex. App.—Houston [14th Dist.] 1985, no writ).
39. 
See Bailey, Vaught, Robertson and Co., 888 S.W.2d at 867.
40. 
See Tex. R. Civ. P. 
166a(c).
41. 
See No. 2-03-379-CV, 2004 WL 1219079, at *2 n.3 (Tex. App.—Fort Worth 
June 3, 2004, no pet.) (mem. op.).
42. 
See id. at *1.
43. 
See Gen. Specialties, Inc., 687 S.W.2d at 774.
44. 
See id.; Bailey, Vaught, Robertson and Co., 888 S.W.2d at 867.