**COMMERCIAL SERVICES OF PERRY, INC., Appellant,**

v.

**Donald J. WOOLDRIDGE, Appellee.**

No. 2–97–221–CV.

Court of Appeals of Texas, Fort Worth.

April 30, 1998.

Rehearing Overruled June 4, 1998.

Jeffrey H. Kobs, Fort Worth, for appellant.

C.W. Stocker, III, David Keltner, Jose, Henry, Brantley & Keltner, Fort Worth, for appellee.

Before DAY, LIVINGSTON and BRIGHAM, JJ.

## OPINION

LIVINGSTON, Justice.

### I.  INTRODUCTION

Appellant Commercial Services of Perry, Inc. (Commercial Services) appeals from a take-nothing judgment in favor of appellee Donald J. Wooldridge in its suit on a renewal note.  In eight points, Commercial Services complains the trial court: (1) abused its discretion in failing to grant its motion to enlarge time to file notice of past due findings of fact and conclusions of law;  (2) erred in admitting or excluding several pieces of evidence;  (3) erred in holding that it was not entitled to judgment on the note;  and (4) erred in finding that Wooldridge's defenses of fraud, payment, and lack of consideration were not barred by the *D'Oench Dhume* doctrine and 12 U.S.C. § 1823(e).  We affirm the trial court's judgment.

### II.  FACTUAL BACKGROUND

Wooldridge met Doyle Dale in 1984 when Dale was a loan officer at the Republic Bank and Wooldridge received a loan.  In 1985, Dale decided to open a bank and asked Wooldridge, who worked in the real estate business, to act as the trustee for the purchase of the land for the bank.  Wooldridge agreed and joined Dale and several other individuals in forming the Southloop Property, a Texas Limited Partnership (South Loop Partnership).  Wooldridge also became a director of

the bank. Dale secured a $500,000 loan from the Bank of North Texas at Hurst (Bank of North Texas) in order to purchase the property, and Fort Worth State Bank subsequently opened in late 1985. Wooldridge resigned as a director of the bank in April 1986 because he was unfamiliar with banking practices and felt overwhelmed.

Evidently in 1987, the Bank of North Texas called its loan and Dale paid the remainder from Fort Worth State Bank funds. In order to shield the loan payment on the books, Dale decided to have each member of the partnership execute a note for a percentage of the amount paid and then give each partner a certificate of participation in their own note so that no money was ever exchanged but the loan payment was effectively papered.

In this regard, Dale contacted Wooldridge about signing some papers "for bookkeeping purposes" and to tie up the loose ends of his relationship with the bank and partnership. Thus, on May 8, 1987, Wooldridge went down to the bank and signed a variable interest rate promissory note for $43,770.13. He also signed a certificate of participation that granted him an undivided, participating interest of $43,770.13 "[i]n a note(s)" for $437,701.26, purportedly executed by Wooldridge that day and bearing interest at the same rate as the $43,770.13 note he had executed that day. Wooldridge signed the note and certificate of participation with the understanding that the documents constituted a wash and were merely needed to end his relationship with the bank and partnership. On the same day, every member of the Partnership executed a similar note, and certificate of participation in their note(s), the sum total being $437,701.26.

Two years later, the bank contacted Wooldridge on two occasions and, on March 31, 1989 and again on September 7, 1989, he went down to the bank and signed renewals of the note after being told the renewals were for bookkeeping purposes and that the bank was making payments on the note.

The September 7 renewal note totaled $53,234.52.

Dale sold the bank in January 1990. Wooldridge learned of the sale several months later and then learned from Ron Hendershot, one of the former partners in the South Loop Partnership who had executed a note and certificate of participation, that the new bank president had begun seeking payment on several of the partners' notes. On February 21, 1990,[1] and at the behest of Hendershot, Wooldridge executed a sale and transfer agreement that "sold" his interest in the South Loop Partnership and gave him a note payable in the same amount as the September 7, 1989 renewal note.

In July 1990, Wooldridge hired an attorney and he and his attorney met with the bank's new president to explain their position, namely that Wooldridge never received anything in return for the note and did not owe anything on it. However, the bank sent Wooldridge a default notice on July 27, 1990. Thereafter, the bank closed, and the FDIC took it over. Apparently, Commercial Services bought a package of the Bank's notes that included Wooldridge's note.

On August 2, 1995, Commercial Services filed suit to collect payment on the September 7, 1989 renewal note, alleging the principal amount of the note due was $53,331.70 and seeking judgment of $117,659.84 along with attorneys' fees. Wooldridge filed a general denial pleading several affirmative defenses, namely release, lack of consideration, fraud in the factum, usury, accord and satisfaction, and laches. After a continuance, and seven days before the trial actually began, Commercial Services filed its amended petition claiming that Wooldridge's affirmative defenses were barred by the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e).

The case was tried to the bench and the trial court entered a take-nothing judgment in favor of Wooldridge on April 3, 1997. Commercial Services timely filed its request for findings of fact and conclusions of law on April 17, 1997, but the court did not file any. Commercial Services failed to timely file its

---

1. At trial, Wooldridge claimed that he did not sign the sale and transfer agreement until October ber 1990.

notice of past due findings of fact but subsequently filed a motion to enlarge time to file its notice of past due findings and conclusions on June 12, 1997. The trial court held a hearing on Commercial Services' request for additional time to file its notice of past due findings and conclusions, but denied the request. Thus, no findings of fact and conclusions of law have been filed.

## III. DISCUSSION ON PRELIMINARY REQUEST FOR REMAND FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW

In its first point,[2] Commercial Services contends the trial court abused its discretion in failing to grant its motion to enlarge time to file notice of past due findings and asks this court to remand the case back to the trial court for entry of findings of fact and conclusions of law. Wooldridge claims: (1) the court had no obligation to issue findings of fact and conclusions of law in the absence of a timely filed notice of past due findings; and (2) under Texas Rule of Civil Procedure 5, Commercial Services cannot show good cause for its failure to timely file its notice of past due findings and, therefore, the trial court had no discretion to grant the extension.

Texas Rule of Civil Procedure 297 states, in part:

> If the court fails to file timely findings of fact and conclusions of law, the party making the request shall, within thirty days after filing the original request, file with the clerk and serve on all other parties in accordance with Rule 21a a "Notice of Past Due Findings of Fact and Conclusions of Law"....

TEX.R. CIV. P. 297.

■ The failure to file a notice of past due findings of fact waives the right to complain about the trial court's failure to file findings of fact and conclusions of law. *See Las Vegas Pecan & Cattle Co. v. Zavala County,* 682 S.W.2d 254, 255 (Tex.1984); *Pierson v. GFH Fin. Servs. Corp.,* 829 S.W.2d 311, 314 (Tex.App.—Austin 1992, no writ); *Smith v.*

*Harrison County,* 824 S.W.2d 788, 792 n. 3 (Tex.App.—Texarkana 1992, no writ).

■ Here, Commercial Services concedes that its notice of past due filing was untimely but claims the trial court had discretion to grant its motion for time to enlarge under Texas Rule of Civil Procedure 5. Rule 5 provides for the extension of time to file certain items where good cause is shown for the extension. TEX.R. CIV. P. 5. Even if we were to assume that Rule 5 applies to this case, Commercial Services' only excuse for the late filing of the notice of past due findings is inadvertence of counsel. Inadvertence of counsel is not good cause. *See Alvarado v. Farah Mfg. Co.,* 830 S.W.2d 911, 915 (Tex.1992). We overrule appellant's first point.

## IV. DISCUSSION ON MERITS OF APPEAL

### A. Standards of Review

■ In a trial to the court where no findings of fact or conclusions of law are filed, the judgment of the trial court implies all necessary findings of fact in support of it. See *Pharo v. Chambers County, Tex.,* 922 S.W.2d 945, 948 (Tex.1996). Where a complete reporter's record is filed in the record, however, these implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual sufficiency of the evidence points. *See Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989). Where such points are raised, the standard of review to be applied is the same as that to be applied in the review of jury findings or a trial court's findings of fact. *See id.*

If an appellant is attacking the legal sufficiency of an adverse answer to a finding on which he had the burden of proof, the Texas Supreme Court has stated that the appellant must, as a matter of law, overcome two hurdles. *See Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 940 (Tex.1991). First, the record must be examined for evidence that supports the finding, while ignor-

---

2. Commercial Services also requests the reporter's record of the hearing on its motion to enlarge be included in the appellate record for appeal. This request was satisfied before oral argument.

ing all evidence to the contrary. Second, if there is no evidence to support the fact finder's answer, then the entire record must be examined to see if the contrary proposition is established as a matter of law. *See id.; Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989).

In determining a "no-evidence" point, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *See Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence. *See Leitch,* 935 S.W.2d at 118.

An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *See Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination. *See Jaffe Aircraft Corp. v. Carr,* 867 S.W.2d 27, 29 (Tex.1993).

▮ Where the implied findings of fact are supported by the evidence, it is our duty to uphold the judgment on any theory of law applicable to the case. *See Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990); *Point Lookout West, Inc. v. Whorton,* 742 S.W.2d 277, 278 (Tex.1987). This is so regardless of whether the trial court articulates the correct legal reason for the judgment. *See Harrington v. Railroad Comm'n,* 375 S.W.2d 892, 895 (Tex.1964); *Dale v. Finance Am. Corp.,* 929 S.W.2d 495, 497–98 (Tex.App.—Fort Worth 1996, writ denied).

### B. The Note Claim

In its seventh point, Commercial Services claims it proved its note claim as a matter of

law because it established that the note: (1) is signed by Wooldridge; (2) contains an unconditional promise or order to pay a sum certain in money; (3) is payable on demand or at a definite time; and (4) is payable to order. Wooldridge claims Commercial Services failed to establish that: (1) it is the legal owner and holder of the note; and (2) a certain balance is due and owing on the note. We find that, regardless of whether Commercial Services proved it was the legal owner or holder of the note, it failed to prove a sum certain due and owing on the note. As a result, we need not address Commercial Services' other points. *See Worford,* 801 S.W.2d at 109; *Whorton,* 742 S.W.2d at 278.

▮ To collect on a promissory note, the holder or payee must establish that: (1) there is a note; (2) it is the legal owner and holder of the note; (3) the defendant is the maker of the note; and (4) a certain balance is due and owing on the note. *See Blankenship v. Robins,* 899 S.W.2d 236, 238 (Tex.App.—Houston [14th Dist.] 1994, no writ). Thus, to recover on the note, Commercial Services must establish, among other things, the amount due on the note. *See Bailey, Vaught, Robertson & Co. v. Remington Invs., Inc.,* 888 S.W.2d 860, 866 (Tex.App.—Dallas 1994, no writ). When, however, the note at issue is a variable rate note[3] tied to a no-longer-published prime rate of a defunct lending institution, the trier of fact should apply a "reasonable" rate of interest if evidence of a reasonable rate of interest is shown in the record. *See id.* at 866–67 (finding variable rate note failed for lack of sum certain where plaintiff presented no evidence of reasonable interest rate.)

▮ Here, the renewal note states that interest should accrue at the initial rate of 13.25% and then fluctuate so as to remain at one percent above Fort Worth State Bank's prime rate. John Foley testified that the principal amount of the note due was $53,-331.70 and that the total amount due, with accrued interest, was $117,659.84. Foley

---

**3.** A variable rate note tied to a bank's published prime rate is a promise to pay a fixed amount of money. *See* TEX. BUS. & COM CODE ANN. § 3.104 (Vernon Supp.1998); *Amberboy v. Societe de*

*Banque Privee,* 831 S.W.2d 793, 797 (Tex.1992), *certified question accepted sub nom. Ackerman v. FDIC,* 930 F.2d 3, 4 (5th Cir.1991).

also testified that Forth Worth State Bank was defunct and that Commercial Services had purchased the note from the FDIC after the FDIC took over the Fort Worth State Bank. Thus, the note is a variable rate note tied to a defunct lending institution and, in order to prove a sum certain due and owing, Commercial Services was required to present some evidence of a reasonable rate of interest in lieu of the inability to ascertain the prime rate for the defunct Fort Worth State Bank. *See id.*

However, Commercial Services failed to meet this requirement during its case-in-chief. It appears Foley calculated the accrued interest using the initial 13.25% figure, despite the fact that the Fort Worth State Bank was defunct and that it could have changed its prime rate before being taken over by the FDIC. Commercial Services presented no evidence concerning whether Fort Worth State Bank's prime rate had changed. In addition, if in fact Foley did use the 13.25% rate, and the record is unclear as to whether he did or not, the record is clear that he did not testify that the 13.25% figure was reasonable. *See id.* at 866–67.

Commercial Services attempted to prove a reasonable rate during its cross-examination of Wooldridge's expert, Bruce McGee. However, Commercial Services was unsuccessful in its attempts to get McGee to opine that the rate used was reasonable. In fact, McGee testified that, although he was present for Foley's testimony, he was unsure of what rate Foley used to calculate the interest Commercial Services was claiming. McGee testified how he might go about determining a reasonable rate of interest, but he did not make any guess at to what a reasonable rate would be. That McGee testified that he could not remember a prime rate below five and one-half percent only adds to Commercial Services' failure to prove a reasonable rate given the fact that it apparently used a rate two and one-half times the "lowest" rate remembered by McGee.

On appeal, Commercial Services argues that, in the event the interest rate payable cannot be ascertained from the description in the note, Texas Business and Commerce Code section 3.112(b) dictates that interest is payable at the judgment rate in effect at the place of payment of the instrument. Section 3.112(b) states:

(b) Interest may be stated in an instrument as a fixed or variable amount of money or it may be expressed as a fixed or variable rate or rates. The amount or rate of interest may be stated or described in the instrument in any manner and may require reference to information not contained in the instrument. If an instrument provides for interest, but the amount of interest payable cannot be ascertained from the description, interest is payable at the judgment rate in effect at the place of payment of the instrument and at the time interest first accrues, and the instrument shall not by virtue of this sentence be considered to violate the provisions of Title 79, Revised Statutes (Article 5069–1.01 et seq., Vernon's Texas Civil Statutes).

TEX. BUS. & COM.CODE ANN. § 3.112(b) (Vernon Supp.1998).

However, we find that section 3.112(b) is inapplicable to the case at hand. The state bar committee comment to section 3.112 cites *Bailey, Vaught,* in opining that the provision "is consistent with the majority of existing Texas case law." *Id.* § 3.112 cmt. 2 (Vernon Supp.1998). Thus, we believe that section 3.112(b) contemplates using the judgment rate for interest in situations where interest is provided for in an instrument but the instrument is silent as to how to calculate the interest, not where an ascertainable interest rate is provided but the sum certain requirement fails for lack of evidence concerning a reasonable rate of interest in a failed bank situation. If we were to substitute the judgment rate into Commercial Services' case, we would, in effect, be rewarding Commercial Services for its failure to prove its case. This result would be inconsistent with the court's holding in *Bailey, Vaught,* which rejected the note holder's argument that article 5069–1.03 of the Texas Revised Civil Statutes could be used to supply the rate of interest. *See Bailey, Vaught,* 888 S.W.2d at 866 (finding article 5069–1.03 inapplicable because "[t]he parties agreed upon a specified rate of prematurity interest for the note.") Thus, we find that Commercial Ser-

vices failed to prove its claim as a matter of law because it failed to prove a reasonable sum certain due and owing on the note. We overrule Commercial Services' seventh point. As a result, we need not address Commercial Services' other points. *See Worford,* 801 S.W.2d at 109; *Whorton,* 742 S.W.2d at 278. We affirm the trial court's judgment.