

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00258-CV

---

ROPA EXPLORATION CORP.                                          APPELLANT

V.

BARASH ENERGY, LTD.                                              APPELLEE

----------

## FROM THE 348TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

Appellant Ropa Exploration Corp. (Ropa) appeals the adverse judgment following a jury trial in the case filed against it by Appellee Barash Energy, Ltd. (Barash Energy). Ropa asserts in eight issues that the evidence is legally and factually insufficient to support the judgment and award of attorney's fees, that the statute of frauds bars enforcement of the parties' contract, that the trial court

---

[1]See Tex. R. App. P. 47.4.

improperly submitted the case to the jury in the charge, and that the trial court erred by failing to grant declaratory relief or an award for unjust enrichment. We affirm.

## II. Background

Mikhail Barash and his wife Alla moved to Texas from the Soviet Union in 1979. Mikhail played violin in the Fort Worth Symphony for several years before he obtained a real estate license and began selling commercial real estate. Mikhail described himself at trial as an entrepreneur. He agreed on cross-examination that he is an experienced businessman who has conducted business for more than thirty years in English and who has owned all or part of six business entities, including a cellular carrier in Turkmenistan.

Tim Vozeh is the president and sole shareholder of Ropa, which is an oil and gas investment firm. Tim testified that he was born in Monte Carlo, that he lived there for seventeen years before coming to the United States, and that his parents were missionaries in Europe. English is his third language; his native language is Czech. Tim testified that he has been involved in the oil and gas industry since 1994. He began his career in the marketing department of a small oil and gas company, and he learned the industry from his employers and business partners and by going to well sites. Tim incorporated Ropa[2] in 1998, and he testified that Ropa had approximately 300 investors at the time of trial.

_____

[2]Tim testified that "Ropa" is "the Czech word for crude, as in crude oil."

2

Mikhail testified that he first met Tim in 2004 through Tim's brother, and Tim described his business to Mikhail at a lunch meeting. Mikhail and his wife Alla made an initial $25,000 investment with Ropa in late 2004 or early 2005, and they made further investments in 2005 and 2006. Mikhail testified that he and Alla formed Barash Energy in approximately October 2005, that they transferred their prior investments into Barash Energy, and that they made all subsequent investments through the entity. Mikhail testified that he understood Barash Energy to be Ropa's largest investor.

Although Mikhail did not have any prior experience with oil and gas related investments, he testified that he understood that the monetary investment with Ropa actually purchased an interest in a well.[3] Mikhail understood that he would receive the cash flow from any production with a new well, that he would have to pay his share of expenses for the well, and that he might be able to sell his interest in the well once it was producing. Mikhail testified that he knew there was risk associated with these investments, specifically that the oil and gas industry is particularly risky, but that he and Alla decided to take the risk.

Tim testified that the first seventeen wells in which Barash Energy invested had been shallow wells. He testified that because of the success with fifteen of

_____

[3]Tim testified that although Ropa is shown on any applicable public records as the owner of the working interests in the wells, the investor becomes the owner of those interests upon payment of the investment. Title to the working interests is typically not reflected on courthouse public records because doing so greatly increases the amount of paperwork.

those seventeen wells, Mikhail told Tim that he wanted larger interests. Tim told Mikhail that Ropa did not have larger interests available, but Mikhail still wanted larger interests in deeper wells because he had read about larger production amounts in the newspaper. Tim testified that he explained to Mikhail that investing in deeper wells is different but that Mikhail still wanted to move forward. Ropa thereafter expanded in an effort to accommodate Mikhail's requests.

Beginning in the summer of 2006, Barash Energy invested in an additional four wells: the Wilson No. 1, the Maxwell No. 1, the Goldston No. 1, and the Turpen-Johnson No. 1 (collectively, the four wells). Mikhail testified that Tim told him that Saddle Creek Energy Development, the company that would drill and operate the four wells, was a "Cadillac operation" with the best equipment and people.

Barash Energy invested a total of $1,635,000 in the four wells by making payment and executing subscription application agreements. Mikhail testified that when the time frame for return on the investments was not a period of weeks, as it had been with the earlier wells, he started questioning Tim about the delays. Mikhail was told each time that there were weather and equipment-related delays. By May 2007, Mikhail had continued questioning Tim about why there had not been any return on the investments in the four wells. On May 23, 2007, Tim sent Mikhail a check for $16,242.31. The cover letter stated that the money represented a five percent return on Barash Energy's investment.

Other evidence at trial revealed the underlying cause of the delays. Ropa wrote to Barash Energy and its other investors in late November 2007 to advise them of difficulties involving Saddle Creek. The letter stated that Ropa was taking legal action to remove Saddle Creek as operator of the wells, that Saddle Creek had not invested Ropa's (and the other investors') funds "in the particular well it was earmarked for," that the extent of Saddle Creek's mismanagement of Ropa's funds was under investigation, and that Ropa would "spend considerable amounts of its own funds" to protect the investors and to complete the wells. Tim testified that Ropa had loaned Saddle Creek $1,250,000 after the initial problems were discovered. Ropa's proof of claim against Saddle Creek in bankruptcy court was almost $6,000,000, and Ropa has an unsatisfied judgment against Saddle Creek for the $1,250,000 loan. Three of the four wells were not good producers and were shut in.

Mikhail admitted having threatened a lawsuit against Ropa as early as the summer of 2007 and having asked Tim for the return of Barash Energy's investment in the four wells by November 2007. Mikhail denied having asked Tim to find an investor to purchase Barash Energy's investment.

Mikhail testified that Tim agreed at a meeting in early November 2007 that Ropa would return Barash Energy's $1,635,000 investment by November 10, 2007, along with ten percent per annum interest. Mikhail testified that he told Tim that Barash Energy wanted its investment returned and that Ropa would in

5

return get all of Barash Energy's interests in the four wells.[4] Mikhail also told Tim that Barash Energy would not sue Ropa, would not tell others of the "raw deal" that Ropa had recommended, and would consider investing with Ropa in the future if Ropa refunded Barash Energy's investment. Mikhail also testified that he told Tim to put their agreement in writing if he was so sure that Ropa would refund the investment.

Barash Energy offered, and the trial court admitted, an exhibit titled "Promissory Note Dated November 10, 2007" (the note). Mikhail testified that Tim brought the note to him to memorialize what Ropa had agreed to concerning the return of Barash Energy's investment in the four wells. Tim had signed the note on behalf of Ropa. The note provided that the "Principal Amount and Interest amounts are due and payable on November 16, 2007"; that the principal amount was $1,635,000; and that the "Annual Interest Rate and Amount" was "Ten Percent Annual (10.0%) less $16,242.31 due to interest payment on May 23rd 2007."

Mikhail testified that the note does not set forth any conditions to its enforceability and that he had not had any discussions with Tim concerning any conditions to the note's enforceability. More specifically, Mikhail testified that he did not agree or even discuss with Tim that the note would not be enforceable

---

[4]Mikhail also testified that he never expected to receive a refund of the investment from Ropa while also retaining Barash Energy's working interests in the four wells.

6

unless and until Ropa found a different investor to purchase Barash Energy's investment. Mikhail acknowledged having had prior discussions with Tim about selling all of Barash Energy's interests, but he testified that those discussions related to the interests in the original seventeen wells, not the four wells. Mikhail also agreed, though, that the note did not set forth the items to which Barash Energy had agreed with Ropa, such as transferring the working interests back to Ropa, not suing Ropa, not publicizing to others that Ropa had suggested the bad investment to Barash Energy, and possibly investing again with Ropa in the future.

Tim testified that he personally drafted the note and that he titled it "promissory note" and added ten percent interest at Mikhail's request. Tim had testified in his deposition, however, that he did not know why he titled the note a promissory note. He testified that at the time he delivered the note to Mikhail, Mikhail was unhappy and was discussing a lawsuit against Ropa. According to Tim, Mikhail said that he would sue Ropa if Ropa did not find someone to purchase Barash Energy's working interests in the four wells and that he would file the lawsuit on November 16, 2007. Tim further testified that when Mikhail asked that Ropa buy back Barash Energy's interest in the wells, Tim told Mikhail that Ropa was not interested in doing so but would attempt to locate another

investor. Tim testified that the enforceability of the promissory note was conditioned upon Ropa's finding a replacement investor by November 16, 2007.[5]

However, Tim testified that he agreed to the terms stated in the promissory note and that nothing on the note itself suggested that Ropa's obligation to pay was conditional. Tim admitted that Ropa had not made any payments on the note, nor had Ropa asked Barash Energy to convey its interests in the four wells to Ropa in exchange for payment on the note.

Mikhail testified that Ropa did not satisfy the note by November 16, 2007, and had not made any payments toward the note. He also testified that, approximately a week after November 16, Tim requested a forty-five day extension on the note and that he had agreed to the extension.

By the end of 2007, Barash Energy had engaged counsel and had learned that Saddle Creek had filed for bankruptcy protection in June 2007. Barash Energy made a formal, written demand in February 2008 that Ropa pay the note. Barash Energy filed this lawsuit against Ropa in June 2008. By the spring of 2009, Ropa decided to abandon and shut in three of the four wells because they were not producing.

### III. Standards of Review

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred

---

[5]Ropa does not argue on appeal that the evidence is not sufficient to support the jury's rejection of Ropa's conditional delivery defense.

by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

If a party is attacking the legal sufficiency of an adverse finding on an issue on which the party had the burden of proof, and there is no evidence to support the finding, we review all the evidence to determine whether the contrary proposition is established as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for

9

differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

When reviewing an assertion that the evidence is factually insufficient to support a finding on which the appealing party had the burden of proof, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the evidence supporting the finding is so contrary to the overwhelming weight of all the evidence that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

## IV.  Discussion

Ropa challenges the legal and factual sufficiency of the evidence, argues that the parties' agreement is barred by the statute of frauds, complains about alleged omissions from and errors within the jury charge, and contends that the trial court erred by failing to award it declaratory relief that Barash still owned working interests or by alternatively failing to award the working interests to Ropa under an unjust enrichment theory.

### A.  The Note

#### 1.  Negotiability Not Relevant

In the first part of its first issue, Ropa contends that the note is not a negotiable instrument and that the enforceability of the note is therefore

governed by general rules of contract law rather than by the Uniform Commercial Code. Although we agree that the note is not negotiable because it does not include language making it payable to bearer or to order, the negotiability of the note is not relevant in this case between the original parties to the note. *See Leavings v. Mills*, 175 S.W.3d 301, 311 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (op. on reh'g) (holding that "[t]he note . . . is not a negotiable instrument, however, since it is not made payable either 'to bearer' or 'to order'"); *Mauricio v. Mendez*, 723 S.W.2d 296, 298 (Tex. App.—San Antonio 1987, no writ) ("Whether the instrument is negotiable or not is irrelevant, since the suit here is between the original parties to the instrument."). Furthermore, this court's precedent establishes that the elements of a claim for nonpayment of a promissory note are the same whether the instrument sued upon is negotiable or not. *See Diversified Fin. Sys., Inc. v. Hill, Heard, O'Neal, Gilstrap & Goetz, P.C.*, 99 S.W.3d 349, 354, 357 (Tex. App.—Fort Worth 2003, no pet.) (stating elements of suit on note claim but also holding that note was not negotiable instrument).

To recover on its claim for nonpayment of the note, Barash Energy was required to prove that "(1) there is a note; (2) it is the legal owner and holder of the note; (3) the defendant is the maker of the note; and (4) a certain balance is due and owing on the note." *Commercial Servs. of Perry, Inc. v. Wooldridge*, 968 S.W.2d 560, 564 (Tex. App.—Fort Worth 1998, no pet.). It is important to note for the remainder of our discussion that these elements were conclusively proven through Mikhail's and Tim's testimony at trial and that Ropa has not contested

the sufficiency of the evidence as to these elements. Ropa's challenges instead relate to defensive issues that do not implicate these elements or the evidence supporting them.

### 2. Consideration and Failure of Consideration

In the remainder of its first issue, Ropa challenges the sufficiency of the evidence and argues that the parties' contract is not enforceable because of lack of consideration and failure of consideration. "Consideration is a present exchange bargained for in return for a promise." *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991). "It consists of either a benefit to the promisor or a detriment to the promisee." *Id.* Failure of consideration is distinct from lack of consideration. *Belew v. Rector*, 202 S.W.3d 849, 854 n.4 (Tex. App.—Eastland 2006, no pet.). Failure of consideration generally "occurs when, because of some supervening cause after an agreement is reached, the promised performance fails." *US Bank, N.A. v. Prestige Ford Garland Ltd. P'ship*, 170 S.W.3d 272, 279 (Tex. App.—Dallas 2005, no pet.).

As to lack of consideration, we note that when parties reduce their agreement to writing, the "written contract presumes that there was consideration given for its execution." *Gooch v. Am. Sling Co.*, 902 S.W.2d 181, 185 (Tex. App.—Fort Worth 1995, no writ) (citing *Wright v. Robert & St. John Motor Co.*, 122 Tex. 278, 282, 58 S.W.2d 67, 69 (1933); *Hargis v. Radio Corp. of Am.*, 539 S.W.2d 230, 232 (Tex. Civ. App.—Austin 1976, no writ)). Because there is a presumption that the note is supported by consideration, "the burden is on the

12

defendant to show that none was actually received." *Maykus v. Tex. Bank & Trust Co. of Dallas*, 550 S.W.2d 396, 398 (Tex. Civ. App.—Dallas 1977, no writ); *see Gooch*, 902 S.W.2d at 185.

In this case, the court's charge asked the jury whether it found by a preponderance of the evidence that the note lacked consideration and whether Barash Energy's claims under the note are barred by a failure of consideration. The jury failed to find in favor of Ropa on either question. Because Ropa had the burden at trial to show that the contract was not supported by consideration (because of the presumption of consideration arising from the written contract, *see Gooch*, 902 S.W.2d at 185) or that there was a subsequent failure of consideration (because failure of consideration is an affirmative defense, *see* Tex. R. Civ. P. 94) and because Ropa is the party challenging the legal sufficiency of the evidence in this appeal, Ropa has the appellate burden to show "that the evidence establishes, as a matter of law, all vital facts in support of the issue," *Francis*, 46 S.W.3d at 241; *see Mo. Pac. R.R. Co. v. Limmer*, 299 S.W.3d 78, 84 (Tex. 2009), *cert. denied*, 131 S. Ct. 75 (2010), or that the jury's negative answers were against the overwhelming weight of the evidence. *See Pool*, 715 S.W.2d at 635. In other words, Ropa must show on appeal that the evidence conclusively establishes that the note was not supported by consideration, that Barash Energy's claims under the note are barred for failure of consideration, or that the jury's negative answers to those questions were against the overwhelming weight of the evidence.

13

Ropa first argues that the note was not supported by consideration because it gratuitously gave the note to Barash Energy without any obligation to do so, analogizing its presentment of the note to Barash Energy to cases in which a promise was not supported by consideration. *See Ranzer v. Traill*, No. 05-01-00481-CV, 2002 WL 428428, at *1–2 (Tex. App.—Dallas Mar. 20, 2002, no pet.) (not designated for publication) (affirming summary judgment because Ranzer presented no evidence of consideration, only that the decedent "wanted [her] to have" a check for $50,000); *Fed. Deposit Ins. Corp. v. Williams*, No. 05-95-00029-CV, 1996 WL 457448, at *1–3 (Tex. App.—Dallas Aug. 7, 1996, no writ) (not designated for publication) (affirming judgment that guaranty agreement executed separately from loan not supported by consideration); *see also Cent. Tex. Micrographics v. Leal*, 908 S.W.2d 292, 296 (Tex. App.—San Antonio 1995, no writ) (holding promise to take employee to Cancun was gratuitous promise not supported by consideration); *Mason v. Babin*, 474 S.W.2d 809, 812 (Tex. Civ. App.—Waco 1971, writ ref'd n.r.e.) (holding promise to pay at-will employee's outstanding note was gratuitous and unsupported by consideration). These cases correctly set forth the law concerning a lack of consideration for gratuitous promises, but they are easily distinguishable because the agreements in those cases were not supported by consideration while, as explained below, Ropa's promise in this case to refund Barash Energy's investment in the four wells was supported by consideration.

14

In *Gooch*, this court held that the evidence was legally and factually sufficient to support the trial court's finding that a guaranty agreement was supported by consideration. 902 S.W.2d at 185. In doing so, we specifically recognized that "[p]ostponement of enforcement of a debt has been held to be sufficient consideration" and that "an agreement to continue doing business with a party confers a benefit on that party." *Id.* (citing *Swofford v. Tri–State Chems., Inc.*, 764 S.W.2d 24, 26 (Tex. App.—El Paso 1989, writ denied); *Hargis*, 539 S.W.2d at 232). Here, Mikhail testified that if Ropa refunded Barash Energy's investment, Barash Energy would not sue Ropa, would not tell others of the "raw deal" it entered into with Ropa, and would consider investing with Ropa in the future.[6] Although Tim testified that Ropa did not receive any return promise from Barash Energy, Tim also testified that Mikhail's promises not to tell others about the bad investment and not to sue were only related to Ropa's making a cash purchase of Barash Energy's working interests by November 16. The jury, though, could have determined that Barash Energy's promises not to sue or not to tell others of the bad investment were given in exchange for the note. Thus, the jury heard evidence from which it could have reasonably refused to find that the note lacked consideration.[7] *See id.* Given this evidence, we hold that Ropa

[6]In addition, there is conflicting evidence as to whether Ropa would also receive Barash Energy's interests in the four wells in exchange for the return of Barash Energy's investment.

[7]Ropa did not challenge the sufficiency of the consideration given in the trial court and does not raise the sufficiency of the consideration on appeal, nor

did not conclusively prove that the note was not supported by consideration and that the jury's finding on the alleged lack of consideration is not so contrary to the overwhelming weight of all the evidence that the answer should be set aside and a new trial ordered. *See id.*; *see also Francis*, 46 S.W.3d at 241; *Sterner*, 767 S.W.2d at 690; *Pool*, 715 S.W.2d at 635.

Concerning the alleged failure of consideration, Ropa characterizes the note as a settlement agreement and argues that Barash Energy is barred from enforcing the note because it did not keep its agreement not to sue. But no witness suggested at trial that the parties' agreement was actually a settlement of all claims that might exist between the parties.[8] Neither Mikhail, Alla, nor Tim mentioned a release as part of the agreement between Barash Energy and Ropa. Rather, Mikhail testified that Barash Energy would agree not to sue Ropa if Ropa agreed to refund Barash Energy's investment, and the evidence at trial showed that Barash Energy waited more than six months before suing Ropa to collect on the note. Postponing enforcement of a debt is sufficient consideration, and there is evidence that Barash Energy waited to enforce the note. *See Gooch*, 902 S.W.2d at 185. Moreover, there was other consideration given for the note, namely that Barash Energy would not tell others of the bad investment

does Ropa contend that any disparity in consideration rendered the note unconscionable and therefore unenforceable.

[8]The majority of Ropa's failure of consideration argument is premised on the unsupported concept that the parties' agreement was actually a settlement and release agreement.

16

and would consider investing with Ropa in the future. Ropa does not contend on appeal that those elements of consideration failed. We hold that legally and factually sufficient evidence supports the jury's finding on the alleged failure of consideration, and we overrule Ropa's first issue.

### 3. Meeting of the Minds

Ropa contends in its second issue that there was no meeting of the minds. "'Meeting of the minds' describes the mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract." *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 720 (Tex. App.—Fort Worth 2008, pet. dism'd) (citing *Weynand v. Weynand*, 990 S.W.2d 843, 846 (Tex. App.—Dallas 1999, pet. denied)). "Mutual assent, concerning material, essential terms, is a prerequisite to formation of a binding, enforceable contract." *Id.* (citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992)). "The determination of whether there is a meeting of the minds, and thus offer and acceptance, is based upon objective standards of what the parties said and did and not on their subjective state of mind." *Id.* (citing *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied)).

Revisiting its characterization of the parties' agreement as "essentially an oral settlement agreement," Ropa argues that there was not sufficient evidence to support a meeting of the minds because Mikhail did not state in his testimony that Barash Energy's agreement not to sue Ropa included a release of liability

17

and did not specify which claims would be released. But this is a "straw man" argument that relies on Ropa's characterization, unsupported by any evidence, of the parties' agreement as a settlement and release agreement that then seeks to render the evidence insufficient to support a meeting of the minds on the alleged settlement and release agreement. In other words, Ropa attempts to expand the scope of the parties' agreement into a settlement and release and then argues that there was no meeting of the minds on the elements of such a settlement and release agreement. We overrule this part of Ropa's second issue.

Ropa also argues that there was no meeting of the minds because there is no evidence that Mikhail and Tim discussed that Barash Energy would convey its working interests to Ropa in exchange for the return of Barash Energy's investment. Even if Ropa's evidentiary contention is accurate, the parties had a legally enforceable agreement because the jury could have reasonably determined that Ropa had agreed to refund Barash Energy's investment in exchange for Barash Energy's agreements not to sue, not to speak ill of Ropa's investment suggestion, and to consider investing with Ropa in the future. *See Gooch*, 902 S.W.2d at 185. The parties' agreement was therefore not contingent upon an agreement to return the working interests to Ropa. We overrule Ropa's second issue.

### 4. Statute of Frauds

Ropa argues in its third issue that the note "is not enforceable because it is simply a part of a larger oral settlement agreement that violates the statute of

18

frauds." Ropa contends that because the parties' agreement concerning the return of Barash Energy's investment also involved the transfer of Barash Energy's working interests back to Ropa, the agreement is an unenforceable written contract.

The statute of frauds provides, among other things, that contracts for the sale of real estate must be written and signed by the party charged. *See* Tex. Bus. & Com. Code Ann. § 26.01(b)(4) (West 2009). Agreements to convey working interests in a mineral lease are real estate contracts subject to the statute of frauds. *Exxon Corp. v. Breezevale, Ltd.*, 82 S.W.3d 429, 437 (Tex. App.—Dallas 2002, pet. denied).

The statute of frauds is an affirmative defense. *See* Tex. R. Civ. P. 94. The party relying on the statute of frauds has the initial burden and must, in addition to pleading the defense, establish its applicability. *Wilhoite v. Frank*, No. 02-10-00134-CV, 2011 WL 754384, at *3 (Tex. App.—Fort Worth Mar. 3, 2011, no pet.) (mem. op.). While the applicability of the statute of frauds is generally a question of law for the court, questions of fact concerning the statute's applicability must be resolved by the jury. *See Am. Fluorite, Inc. v. JB Oilfield, L.L.C.*, No. 09-08-00184-CV, 2008 WL 5740360, at *8 (Tex. App.—Beaumont Mar. 19, 2009, no pet.) (mem. op.) ("If [the defendant] thought the evidence supported its statute of frauds defense, it should have submitted the proper jury question to ensure a jury finding on that defense.").

19

Ropa pleaded the statute of frauds as an affirmative defense, but there was conflicting evidence at trial as to whether Ropa and Barash Energy agreed that Ropa would receive the working interests back from Barash Energy in exchange for Ropa's refund of Barash Energy's investment. Mikhail, for example, testified inconsistently on that point. Mikhail initially testified that Ropa would receive Barash Energy's working interests in exchange for the investment refund, but he later testified that Barash Energy, even after receiving the note, still owned the working interests and would sell them to anyone willing to pay for them. Indeed, Ropa argues in its first issue that there was no consideration given for the note and contends in its second issue that "there was never a discussion between Ropa and Barash that Barash [Energy] would convey its working interests to Ropa in exchange for the [note] or any payment." Thus, the evidence does not conclusively establish that the parties had an oral agreement to transfer the working interests to Ropa in exchange for the refund of Barash Energy's investment. Rather, as discussed above, there was other consideration to support the note's enforceability, and its enforceability is not dependent on Barash Energy's agreement to transfer the working interests back to Ropa. Instead, Barash Energy's agreements to not sue Ropa, to not tell others about the bad investment, and to consider investing with Ropa in the future served as consideration. *See Gooch*, 902 S.W.2d at 185.

Because the evidence is not conclusive as to whether the parties in fact agreed that Barash Energy would return its working interests to Ropa, Ropa

should have requested the submission of a question in the jury charge as to whether the parties' agreement included an oral agreement to convey the working interests. *See Am. Fluorite, Inc.*, 2008 WL 5740360, at *8 (holding party relying on statute of frauds should request submission of jury question if it believes facts support affirmative defense of statute of frauds). We have reviewed Ropa's pretrial proposed jury charge; its objections to the court's charge; and its formally requested questions, definitions, and instructions that were refused by the trial court, but we have not located any request or objection that would have, if submitted or sustained, placed before the jury the question of whether the parties had an oral agreement to transfer the working interests back to Ropa. Absent a request that the jury determine the gateway matter that would lead to the application of the statute of frauds as an affirmative defense, we cannot on this record hold that the parties' agreement is barred by the statute of frauds. *See Wilhoite*, 2011 WL 754384, at *3 (requiring party relying on statute of frauds to plead and prove its applicability); *see generally Am. Fluorite, Inc.*, 2008 WL 5740360, at *7–8 (noting that existence of agreement and whether agreement unenforceable under statute of frauds are separate questions, discussing party's burden to request jury questions on affirmative defense of statute of frauds, and holding that instruction would not assist jury because evidence did not raise fact question on statute of frauds defense). We overrule Ropa's third issue.

### 5. Omission of Elements from Jury Charge

Ropa contends in its fourth issue that Barash Energy waived its claim for recovery on the note by failing to secure factual determinations from the jury on each essential element of the claim.

As stated above, the elements of Barash Energy's claim on the note are that there is a note, that Barash Energy is the legal owner and holder of the note, that Ropa is the maker of the note, and that a balance is due and owing on the note. *See Wooldridge*, 968 S.W.2d at 564. Tim admitted in his testimony that he had drafted the note on Ropa's behalf, that he had signed the note as Ropa's president, that he had delivered the note to Barash Energy at Mikhail's home, and that Ropa had not made any payments on the note. Mikhail testified that he had taken possession of the note at the time Tim delivered it to him, that he or his attorney had maintained possession of the note at all subsequent times, and that Barash Energy had not assigned or otherwise transferred its interest in the note to any other person or entity.

This testimony was not refuted at trial and conclusively established the elements of Barash Energy's claim on the note. It is well-settled that undisputed facts need not be submitted to the jury. *Sullivan v. Barnett*, 471 S.W.2d 39, 44 (Tex. 1971) ("Submission of an issue on an undisputed fact is unnecessary."); *Ace Fire Underwriters Ins. Co. v. Simpkins*, 380 S.W.3d 291, 303 (Tex. App.— Fort Worth 2012, no pet.) ("When facts are undisputed or conclusively established, there is no need to submit those issues to the jury."). Because the

22

elements of Barash Energy's claim on the note were conclusively established at trial, the trial court did not err by not submitting Barash Energy's note claim to the jury.[9] We overrule Ropa's fourth issue.

### 6. Declaratory Relief

Ropa contends in its fifth issue that the trial court erred by failing to award it declaratory relief that Barash Energy still owns an interest in the four wells and that Barash Energy had not sold its interests. Ropa asserts that because the evidence conclusively shows that the note was not enforceable, the trial court erred by failing to award Ropa the declaratory relief it sought. But Ropa's fifth issue hinges on the success of its argument that the note is not enforceable. Because we held otherwise above, we likewise overrule Ropa's fifth issue.

### 7. Burden of Proof in Jury Charge

Ropa argues in its sixth issue that the trial court erred by wording the questions in the jury charge in a way that placed the burden of proof on Ropa. As discussed above, however, the evidence conclusively established each element of Barash Energy's claim on the note,[10] and the burden of proof was on

---

[9]We note that, despite Ropa's implication that Barash Energy waived its claim on the note by failing to submit jury questions on that claim, Barash Energy presented the trial court with proposed questions, definitions, and instructions on its note claim before trial. The proposed submissions included alternate versions of the note claim and would have allowed the trial court to submit the claim in broad-form or by a series of individual questions, but the trial court chose not to submit those questions to the jury.

[10]As listed twice above, the elements of Barash Energy's claim on the note are that there is a note, that Barash Energy is the legal owner and holder of the

23

Ropa to overcome the presumption that the note was supported by consideration and to prove its affirmative defense of failure of consideration. *See Gooch*, 902 S.W.2d at 185 (discussing presumed consideration for written contract); *Maykus*, 550 S.W.2d at 398 (burden on party alleging lack of consideration for written contract); *see also* Tex. R. Civ. P. 94 (listing "failure of consideration" as affirmative defense); *Garner v. Fidelity Bank, N.A.*, 244 S.W.3d 855, 861 (Tex. App.—Dallas 2008, no pet.) ("The party asserting an affirmative defense bears the burden of proving its elements."). We therefore overrule Ropa's sixth issue.

## B. Attorney's Fees

Ropa asserts in its eighth issue that the evidence is legally and factually insufficient to support the award of attorney's fees to Barash Energy. Specifically, Ropa asserts that only one of Barash Energy's nine causes of action (breach of contract) permitted recovery of attorney's fees but that Barash Energy's attorney testified that he had spent approximately seventy-five percent of his time prosecuting the breach of contract claim, that Barash Energy did not offer its attorney's fee statements into evidence, and that the segregation testimony was "completely conclusory." Ropa also argues that the jury awarded $100,000 in attorney's fees to Barash Energy but that the attorney's fee testimony supported an award of only $89,372.09. Barash Energy responds that its evidence concerning a percentage for segregation is permissible, that the

note, that Ropa is the maker of the note, and that a balance is due and owing on the note. *See Wooldridge*, 968 S.W.2d at 564.

24

testimony by its attorney was not conclusory, and that the jury's finding of $100,000 in attorney's fees is within the range of evidence presented at trial because Barash Energy offered evidence of $89,372.09 in attorney's fees and $14,195.08 in expenses.

Barash Energy's counsel, Lee Christie, testified at trial as an expert witness. Mr. Christie described his background and twenty-three years of practice in Tarrant County and testified that he was charging $200 per hour for his time instead of his typical rate of $300 per hour, that he was charging $175 per hour for time expended by another attorney in his law firm, that both rates were reasonable in Tarrant County, that he and the other attorney had expended a total of 571.25 hours on the case at an average hourly rate of $195 per hour for a total of $111,162.79 up to the time of trial, that he estimated another forty hours of time at $200 per hour to complete the trial, and that a total reasonable fee for all time expended through the completion of trial was $119,162.79. Mr. Christie also testified about the number of depositions in the case, the amount of discovery, the number of documents reviewed, and the complexity of the case given the vigorous defense and the involvement of oil and gas-related matters. He also testified that Barash Energy had incurred $14,195.08 in litigation expenses.

Mr. Christie opined that approximately seventy-five percent of the attorney time was spent prosecuting the promissory note claim[11] and that twenty-five percent of the time was devoted to claims for which fees are not recoverable. On cross-examination, Mr. Christie acknowledged that his billing statements had not been offered into evidence. Indeed, a majority of the cross-examination related to the absence of the billing statements. Mr. Christie explained, however, that he did not believe the fee statements would be helpful to the jury because of the amount of information that would have had to be redacted to protect the attorney-client privilege.

An expert's testimony is conclusory if the expert does not explain the basis of his statement in order to link his conclusions to the facts. *See Damian v. Bell Helicopter Textron, Inc.*, 352 S.W.3d 124, 148 (Tex. App.—Fort Worth 2011, pet. denied). Ropa argues that the attorney's fee testimony was conclusory as to the seventy-five percent segregation estimate because the billing records were not in evidence and because only one of the nine asserted causes of action is a claim for which attorney's fees are recoverable. We disagree for two reasons. First, our supreme court has expressly stated that it is permissible for an attorney to estimate the amount of time expended on claims for which attorney's fees are recoverable. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006) (holding that attorneys need not keep separate time records for claims for

---

[11]Seventy-five percent of $119,162.79 is $89,372.09.

26

which fees are recoverable and claims for which fees are not recoverable and stating that "an opinion would have sufficed stating that, for example, 95 percent of their drafting time would have been necessary even if there had been no fraud claim"). It was therefore permissible for Mr. Christie to offer his opinion that seventy-five percent of the services rendered for Barash Energy in this case related to the breach of contract claim. Second, even though the actual billing records were not offered into evidence, Mr. Christie provided the jury with the exact number of hours billed before trial, an estimate of the number of hours needed to complete the trial, the two applicable billing rates, and the total amount of attorney's fees and expenses incurred by Barash Energy. Mr. Christie also testified about the tasks performed in the case, the case's unique factual complexities, and the vigorous defense asserted throughout by Ropa. On cross-examination, Mr. Christie testified further about the number of hours expended on the claims for which attorney's fees are not recoverable. Under these circumstances, we hold that Mr. Christie's testimony sufficiently linked his opinions to the facts of the case and that his testimony that seventy-five percent of Barash Energy's attorney's fees were incurred for the breach of contract claim was not conclusory. *See Sundance Minerals, L.P. v. Moore*, 354 S.W.3d 507, 514–15 (Tex. App.—Fort Worth 2011, pet. denied) (holding that affidavit proving amount of attorney's fees was not conclusory and recognizing that "billing records need not be introduced to recover attorney's fees" (quoting *Air Routing Int'l Corp. (Can.) v. Britannia Airways, Ltd.*, 150 S.W.3d 682, 692 (Tex. App.—

27

Houston [14th Dist.] 2004, no pet.)).  Furthermore, Mr. Christie testified that seventy-five percent of Barash Energy's attorney's fees totaled $89,372.09 and that Barash Energy had $14,195.08 in litigation expenses.  The jury's finding of $100,000 in attorney's fees is therefore within the range of evidence presented at trial.  *See Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002) (stating that the factfinder "has discretion to award damages within the range of evidence presented at trial").  We overrule Ropa's eighth issue.

## C.  Unjust Enrichment

Ropa argues in its seventh issue that, if the damage award for Barash Energy is affirmed, the trial court erred by failing to award the working interests to Ropa as part of the judgment.  Barash Energy responds that unjust enrichment is not an independent cause of action and that Ropa's counterclaim sought only recovery of money damages (not conveyance of the working interests), meaning the trial court could not have awarded the working interests to Ropa because Ropa's pleadings did not seek that relief.

Ropa's counterclaim does not request conveyance of the working interests in the alternative to its defenses to the enforceability of the note.  It instead states that "in the event the Court finds that Ropa bought out the Investment, Ropa requests judgment from the Court that Ropa is entitled to recover the monies previously paid to Barash Energy pursuant to the Investment with interest as allowed by law."  In addition, the unjust enrichment jury question tendered by Ropa, which the trial court submitted to the jury without revision and which the

28

jury failed to find in Ropa's favor, asked only if Barash Energy "was unjustly enriched by holding money that, in equity and good conscience, belonged to Ropa." The accompanying instruction similarly asked only about money held by Barash Energy without mentioning the working interests.

Ropa unquestionably pleaded for unjust enrichment in the form of money damages, but it did not seek return of the working interests. The trial court thus did not err by failing to award Ropa relief it did not seek. *See* Tex. R. Civ. P. 301 (stating in part that "[t]he judgment of the court shall conform to the pleadings"); *see also Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983) ("[A] judgment must be supported by the pleadings and, if not so supported, it is erroneous. Thus, a party may not be granted relief in the absence of pleadings to support that relief." (citations omitted)). We overrule Ropa's seventh issue.

## V. Conclusion

Other than the conclusive evidence proving Barash Energy's claim against Ropa on the note, the evidence in this case was conflicting in most respects, and the jury resolved those conflicts against Ropa. We are mindful that the result of the trial court's judgment does not in all ways seem fair. However, Ropa agreed to return Barash Energy's investment in the four wells and tendered the note to Barash Energy, and the note is supported by consideration. Given the applicable burdens of proof, standards of appellate review, and the parties' respective requests for relief, we as the reviewing court are limited in the relief we may

29

grant. Thus, having overruled each of Ropa's eight issues, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

DELIVERED:  June 13, 2013